724 So.2d 1121 (1998)
Raymond OSBORN, Appellant,
v.
Susan Janet OSBORN, Appellee.
No. 96-CA-00594 COA.
Court of Appeals of Mississippi.
December 18, 1998.
*1122 James Travis Belue, Iuka, Attorney for Appellant.
Eugene B. Gifford, Jr., Rhonda N. Allred, Booneville, Attorneys for Appellee.
BEFORE THOMAS, P.J., KING AND PAYNE, JJ.
KING, J., for the Court:
¶ 1. The Tishomingo County Chancery Court granted Mrs. Osborn a divorce on the ground of adultery and ordered, inter alia, that Mr. Osborn pay $200 in monthly child support, $300 a month in periodic alimony, and $199.44 toward Mrs. Osborn's car loan.
¶ 2. Mr. Osborn has appealed this judgment, raising the following issues:
1. Whether it was manifest error and an abuse of discretion for the trial judge to deviate from the statutory guidelines and award child support in the amount of $200 per month.
2. Whether it was manifest error and an abuse of discretion for the trial judge to order the Appellant to pay $200 per month *1123 child support, $199.44 per month automobile loan, and $300 per month in periodic alimony when such payments comprised 89.7% of Appellant's gross monthly income.
3. Whether it was manifest error and an abuse of discretion for the trial judge to award $1000 in attorney's fees absent a finding of reasonableness of said attorney fees and Appellee's inability to pay.
¶ 3. Mrs. Osborn has cross-appealed, citing the following issues:
1. Whether it was manifest error and an abuse of discretion for the trial judge to only award $300 per month in periodic alimony in light of proof that Appellant's income, assets, and earning capacity greatly exceeded that of the Appellee.
2. Whether it was manifest error and an abuse of discretion for the trial judge to only award $200 in monthly child support in light of the child's substantial needs and Appellee's inability to provide for those needs.
3. Whether it was manifest error and an abuse of discretion for the trial judge to only award $1000 in attorney fees.

STATEMENT OF FACTS
¶ 4. The parties were married on December 12, 1972, and separated on April 27, 1995. Two children were born to this union, one of whom was a minor at the time of divorce. Mr. Osborn filed for divorce on September 18, 1995, alleging habitual cruel and inhuman treatment and irreconcilable differences. On October 13, 1995, Mrs. Osborn counter-sued alleging adultery, habitual cruel and inhuman treatment, and irreconcilable differences.
¶ 5. The chancellor entered a temporary order granting Mrs. Osborn custody of the parties' minor child, exclusive use of the marital residence, and the cars driven by Mrs. Osborn and the minor child. The chancellor ordered Mr. Osborn to pay $300 per month in child support and to pay the mortgage, taxes, and insurance on the marital residence. Mr. Osborn was also ordered to pay the indebtedness on the vehicles driven by Mrs. Osborn and the minor child, to maintain hospitalization coverage on Mrs. Osborn and the child, and to pay all future medical expenses incurred by Mrs. Osborn and the minor child.
¶ 6. On March 14, 1996, Mrs. Osborn filed a contempt action against Mr. Osborn for failure to comply with the chancellor's temporary order.
¶ 7. On May 2, 1996, the court held a joint hearing on the contempt citation and complaint for divorce.
¶ 8. The chancellor entered a final judgment of divorce in favor of Mrs. Osborn on the ground of adultery. Mrs. Osborn was awarded custody of the minor child, child support in the amount of $200 per month, periodic alimony in the amount of $300 per month for a period of 36 months, one-half the proceeds from the sale of the marital domicile, one-half the value of Mr. Osborn's retirement fund at the time of disbursement, and one-half the redemption value of church bonds jointly held by the parties. Mr. Osborn was ordered to pay the $199.44 monthly note on the vehicle driven by Mrs. Osborn[1], maintain medical coverage on the minor child, and pay one-half of any medical bills of the minor child not covered by insurance.
¶ 9. Mr. Osborn was found in contempt of the temporary order and ordered to pay $1,475 in past due child support and $361.09 in past due utility bills.
¶ 10. After the instant appeal was perfected, this Court remanded this matter to the Tishomingo County Chancery Court to make findings regarding (1) the reasonableness of the child support award under our statutory guidelines, (2) the financial status of Raymond Osborn, and (3) the ability of Raymond Osborn to make the payment. This Court has received the chancellor's supplementation of the record and now proceeds to address this matter on its merits.

ANALYSIS

STANDARD OF REVIEW
¶ 11. In reviewing domestic relations cases, this Court "will not disturb the chancellor's findings unless manifestly wrong, clearly erroneous, *1124 or if the chancellor applied an erroneous legal standard." Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994), (citing McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994)).
I(A). WHETHER IT WAS MANIFEST ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO DEVIATE FROM THE STATUTORY GUIDELINES AND AWARD CHILD SUPPORT IN THE AMOUNT OF $200 PER MONTH.
¶ 12. Mr. Osborn argues on appeal that the chancellor erred in failing to consider the child support award together with all economic awards. Mr. Osborn suggests that this Court should reverse the chancellor's child support award because it exceeds the child support guidelines and the deviation was not supported by written findings or the substantial evidence. In support of this argument, Mr. Osborn cites his unemployment status at the time of the hearing.
¶ 13. Although we disagree with Mr. Osborn's argument that the chancellor was bound to set his child support obligation based on the amount of unemployment compensation being received at the time of the hearing, we find the remainder of his argument to be meritorious.
¶ 14. Mr. Osborn has worked as an electrician in the construction industry for 18 years. Due to the nature of his employment, Mr. Osborn regularly experienced brief periods of unemployment.[2] Prior to his December 14, 1995 lay off, Mr. Osborn had been employed by Stone and Webster Engineering Corporation for approximately three years. Following the lay off from Stone and Webster, Mr. Osborn worked at Doleac Electric for approximately three months after which he resumed employment with Stone and Webster. Eleven days prior to the hearing on the merits, Mr. Osborn experienced yet another lay off from Stone and Webster. At the time of the trial, his income was $180 per week in unemployment compensation.
¶ 15. The chancellor ordered Mr. Osborn to pay $200 per month in child support, maintain medical insurance on the minor child, and pay one-half of all medical and dental expenses of the minor child not covered by insurance. In his order, the chancellor failed to specifically determine on the record Mr. Osborn's adjusted gross income as mandated by Miss.Code Ann. § 43-19-101(3)(a). For this reason, this Court remanded this matter for additional hearings. Upon remand, the chancellor made the following findings of fact and conclusions of law:
The Court finds that Raymond Osborn's income had only been reduced to unemployment benefits in the amount of $180.00 for only eleven days before the hearing on the merits. The Court further finds, based upon the oral and documentary proof of Raymond Osborn's past employment record, that Raymond Osborn will be employed again on a full time basis within a reasonably short period of time, at his usual and customary income level.
. . . . .
The Court finds that at the time of the hearing on the merits, the parties has [sic] one minor child residing in the martial home. This child, Timothy Paul Osborn, was seventeen years of age and a junior in high school. The Court finds, based upon the statutory guidelines promulgated by the Legislature, that child support should be at least 14% of Raymond Osborn's adjusted gross income and based upon the substantial earning capacity of Raymond Osborn, the Court has broad discretion in setting the amount of child support. (emphasis added).
¶ 16. The chancellor's statement that he has broad discretion in setting the amount of child support is only partially correct. Child support awards which follow Mississippi child support guidelines are entitled to a rebuttable presumption of correctness. Miss. Code Ann. § 43-19-101(1) (Rev.1993). In the event that the chancellor finds that application of the guidelines would be unjust or inappropriate, a deviation is permitted if it is accompanied by a "written finding or specific finding on the record" detailing the reasons for said deviation. Id. In this regard, the *1125 chancellor's pronouncement of "broad discretion in setting the amount of child support" is true only to the extent that the award comports with the guidelines or if the deviation is supported by substantial evidence and buttressed by specific, on the record, findings.
¶ 17. The court went on to make the following findings:
The Court find [sic] that Raymond Osborn makes approximately $2,400.00[3] a month and has expenses of $1,100.00, leaving him $1,300.00[4] per month in disposable income, with which to meet his obligations.
The Court finds that Timothy Paul Osborn is at a point in his life wherein he will incur a substantial increase in expenses for his academic endeavors and personal pursuits and will need substantial financial contributions.
Therefore, the Court finds that child support shall be set at $200.00 per month, taking into consideration the superior earnings of Raymond Osborn and the current temporary unemployment of Raymond Osborn.
Raymond D. Osborn testified at the remand hearing, that during 1996, he had a gross income from employment, unemployment compensation, and other income of $19,682.00.[5] This is set forth on his statement of financial condition, pursuant to Rule 8.05 of the Uniform Chancery Court rules in the State of Mississippi.
¶ 18. Pursuant to Miss.Code Ann. § 43-19-101(3) (Rev.1993), 14% of adjusted gross income is presumed to be adequate for a single child. While a chancellor may deviate from the guidelines of § 43-19-101, such deviation must be justified by specific written findings. The chancellor must apply the guidelines to make the determination that their application would be unjust.
¶ 19. In doing so, the chancellor must first ascertain adjusted gross income. The award of child support should then be based upon that adjusted gross income. The statute defines adjusted gross income as that which is left after deductions for (1) federal, state, and local taxes (2) social security and, (3) retirement and disability. The chancellor's findings on remand suggest that the award of child support was predicated, not upon adjusted gross income, but rather that income which remained to Mr. Osborn after payment of his bills. This by definition would be a deviation from the child support guidelines.
¶ 20. While we recognize the authority of the chancellor to deviate from the statutory guidelines, such deviation must be supported by specific written findings of fact. In the case sub judice, the chancellor failed to make the preliminary determination of adjusted gross income. Without having the benefit of the chancellor's finding of adjusted gross income, this Court cannot say that the guidelines were either followed or not followed. Likewise, assuming there to have been a deviation, either up or down, this Court cannot say that the chancellor did not abuse his discretion. In the absence of specific findings of fact to support a deviation from the child support guidelines, the chancellor's award is not entitled to the presumption of correctness under the statute. Rakestraw v. Rakestraw, 96-CA-0118-COA (¶ 15) (Miss. App.1998). We, therefore, reverse and remand this matter to the chancery court for proceedings not inconsistent with this opinion on the issue of child support.

MRS. OSBORN'S CROSS-APPEAL
I(B). WHETHER IT WAS MANIFEST ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO ONLY AWARD $200 IN MONTHLY CHILD SUPPORT IN LIGHT OF THE CHILD'S SUBSTANTIAL NEEDS AND APPELLEE'S INABILITY TO PROVIDE FOR THOSE NEEDS.
¶ 21. In her cross-appeal, Mrs. Osborn argues that the chancellor committed an abuse *1126 of discretion when he failed to award more than $200 per month in child support payments. Specifically, Mrs. Osborn argues that the chancellor failed to consider the parties's "health and earning capacity, reasonable needs of the wife and child, living expenses of the husband, possession and use of the marital home, and possession and use of automobiles, etc." As previously noted, this Court cannot say with certainty that the chancellor followed the guidelines or provided sufficient findings to justify his deviation from the guidelines. We, therefore, find it unnecessary to address this portion of Mrs. Osborn's cross-appeal.
II(A). WHETHER IT WAS MANIFEST ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO ORDER THE APPELLANT TO PAY $200 PER MONTH IN CHILD SUPPORT, A $199.44 PER MONTH AUTOMOBILE LOAN, AND $300 PER MONTH IN PERIODIC ALIMONY WHEN SUCH PAYMENTS COMPRISED 89.7% OF APPELLANT'S GROSS MONTHLY INCOME.
¶ 22. Mr. Osborn argues that the chancellor's economic awards disproportionately burden him without consideration of his ability to pay.
¶ 23. As noted in Part I of this opinion, the chancellor was not obligated to base his financial awards on Mr. Osborn's temporary unemployment situation. Finding this assignment of error to be without merit, we affirm.

MRS. OSBORN'S CROSS-APPEAL
II (B). WHETHER IT WAS MANIFEST ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO ONLY AWARD $300 PER MONTH IN PERIODIC ALIMONY IN LIGHT OF PROOF THAT APPELLANT'S INCOME, ASSETS, AND EARNING CAPACITY GREATLY EXCEEDED THAT OF THE APPELLEE.
¶ 24. Mrs. Osborn argues in her cross-appeal that the chancellor erred in failing to provide enough support and alimony to maintain the same standard of living which she enjoyed during the marriage. Mrs. Osborn alleges that her monthly expenses total approximately $1,500[6] and that her net weekly pay is $165. Mrs. Osborn was awarded child support in the amount of $200 per month, periodic alimony in the amount of $300 per month for a period of 36 months, one-half the proceeds from the sale of the marital domicile, one-half the value of Mr. Osborn's retirement fund at the time of disbursement, and one-half the redemption value of church bonds jointly held by the parties. Mr. Osborn was ordered to pay the $199.44 monthly note on the vehicle driven by Mrs. Osborn, maintain medical coverage on the minor child, and pay one-half of any medical bills of the minor child not covered by insurance.
¶ 25. The decision whether to award alimony and in what amount is largely within the discretion of the chancellor. Smith v. Smith, 614 So.2d 394, 397 (Miss. 1993). We will not disturb the chancellor's award on appeal unless it is a product of manifest error or against the overwhelming weight of the evidence. McNally v. McNally, 516 So.2d 499, 501 (Miss.1987). "In the case of claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." Id.
¶ 26. In the case sub judice, Mrs. Osborn has wholly failed to meet her burden of proving that the chancellor's award did not adequately address her monthly financial needs. To the extent that the award leaves Mrs. Osborn with a deficit each month, the chancellor obviously failed to find her proof on certain expenses to be convincing.[7] In the absence of proof that the chancellor abused his discretion in setting the economic *1127 awards, this Court is without authority to reverse.
III(A). WHETHER IT WAS MANIFEST ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO AWARD $1000 IN ATTORNEY'S FEES ABSENT A FINDING OF REASONABLENESS OF SAID ATTORNEY FEES AND APPELLEE'S INABILITY TO PAY.
¶ 27. Mr. Osborn argues that the chancellor committed manifest error and an abuse of discretion in awarding Mrs. Osborn attorney's fees in the absence of evidence of her inability to pay. Mrs. Osborn responds that because the chancellor granted attorney's fees without making a specific finding, this Court should assume that the chancellor resolved all findings in favor of the judgment.
¶ 28. The award of attorney's fees in domestic cases is addressed to the sound discretion of the chancellor. Varner v. Varner, 666 So.2d 493, 498 (Miss.1995). Traditionally, one seeking an award of attorney's fees must first establish an inability to pay. Sarver v. Sarver, 687 So.2d 749, 755 (Miss. 1997). However, the supreme court has held that where delinquencies have necessitated the institution of legal proceedings, thereby causing the injured parties to incur expense, an attorney's fee award is warranted. Mizell v. Mizell, 708 So.2d 55, 65 (Miss.1998).
¶ 29. In the case at bar, Mr. Osborn was found in contempt of the chancellor's temporary order requiring him to pay $300 in child support and was ordered in the final judgment of divorce to pay $1,475 in past due child support and $361.09 in delinquent utility bills. We, therefore, affirm the chancellor's award of attorney's fees.

MRS. OSBORN'S CROSS-APPEAL
III(B). WHETHER IT WAS MANIFEST ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO ONLY AWARD $1000 IN ATTORNEY FEES.
¶ 30. Mrs. Osborn requests this Court to increase the chancellor's award of attorney's fees because she has incurred attorney's fees well in excess of $1000. Additionally, Mrs. Osborn asks this Court to award her 50% of what we determine to be a reasonable award for maintaining the instant appeal.
¶ 31. We decline the invitation to increase the chancellor's attorney fee award. See Poole v. Poole, 701 So.2d 813, 819 (Miss. 1997)("We are reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of any award,") (citations omitted). Mrs. Osborn's request for attorney fees for prosecuting the instant appeal are also denied.

CONCLUSION
¶ 32. The chancellor's award of child support is hereby reversed and remanded to the chancery court for further proceedings. The Tishomingo County Chancery Court is affirmed on all other issues.
¶ 33. THE JUDGMENT OF THE TISHOMINGO COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE AND SOUTHWICK, JJ., CONCUR.
NOTES
[1] The final divorce decree made no mention of the vehicle driven by the parties's minor child.
[2] Mr. Osborn testified that, in the 18 years of his career, the longest period of unemployment was five or six months "when construction wasn't good."
[3] If the chancellor based child support on $2,400 per month gross income, then 14% of $2400 is $336.
[4] If $13.00 was used to calculate Mr. Osborn's child support obligation, then 14% of $1,300 is $182.
[5] If monthly child support were based upon this figure, Mr. Osborn's obligation would be $229 (14% of $19,682 ($1,640 per month)).
[6] Mrs. Osborn listed the following monthly expenses in her cross-complaint: (1) electricity bill$111.07; (2) Water bill$18; (3) Gas $250; (4) Gas for cars$250; (5) Car Tags$11.70; (6) Car upkeep$50; (7) Doctor bill$210; (8) Prescription drugs$65.29; (9) Telephone$54; (10) Groceries$480.
[7] The chancellor's order provides that Mr. Osborn will pay to Mrs. Osborn $699.44 per month. That amount added to her net monthly wages of $660.00, leaves an approximately $140.00 monthly deficit.