# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-CA-00613-COA

SHAYNA R. NIX                                                APPELLANT

v.

CARLO C. NIX, III                                            APPELLEE

DATE OF JUDGMENT:            03/05/1999
TRIAL JUDGE:                HON. THOMAS L. ZEBERT
COURT FROM WHICH APPEALED:  RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:     WILLIAM P. FEATHERSTON JR.
ATTORNEY FOR APPELLEE:      CHRISTOPHER A. TABB
NATURE OF THE CASE:         CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:    CHILD SUPPORT AWARDED TO CUSTODIAL PARENT
DISPOSITION:                AFFIRMED - 09/12/2000
MOTION FOR REHEARING FILED: 10/10/2000; denied 12/5/2000
CERTIORARI FILED:           12/14/2000; granted 2/22/2001
MANDATE ISSUED:

EN BANC.

McMILLIN, C.J., FOR THE COURT:

¶1. Shayna Nix and Carlos Nix agreed to a divorce on the ground of irreconcilable differences. By agreement, primary custody of the minor child of the parties was awarded to Mrs. Nix. However, the parties were unable to mutually agree as to an appropriate amount of child support, and that issue, along with a number of others, was submitted to the chancellor for decision. The chancellor found Mr. Nix's monthly income as defined in Section 43-19-101(3)(e)of the Mississippi Code (Rev. 1993) to be $2,024 and set child support at $285 per month, which is effectively fourteen percent of Mr. Nix's monthly income. Mrs. Nix has appealed that aspect of the chancellor's decision, contending that the chancellor erred in determining Mr. Nix's statutorily-defined adjusted gross income. She has also appealed the chancellor's refusal to award her attorney's fees for her representation in the divorce proceeding. Finding no reversible error in the chancellor's ruling, this Court affirms.

## I.

### Child Support Calculation

¶2. Mr. Nix worked as a self-employed plumber. As evidence of his earnings in his profession, a copy of his 1998 income tax return was introduced. That instrument showed that Mr. Nix had a pre-tax adjusted gross income, as defined by federal income law, of $34,834 and that he owed $10,544 in federal taxes. (This State's statute setting out guidelines for determining child support, perhaps unfortunately, uses the

identical phrase "adjusted gross income," to define a calculation that is not the same as "adjusted gross income" as used in federal income tax law. Miss. Code Ann.§ 43-19-101(3) (Rev. 1993).) It appears that Mr. Nix's adjusted gross income for child support was calculated by subtracting his tax liability of $10,544 from his adjusted gross income for tax purposes of $34,834 and then dividing the resulting annual figure by twelve (with the result rounded to the nearest dollar).

¶3. Mrs. Nix contends on appeal that the chancellor's determination of Mr. Nix's adjusted gross income for child support was manifestly in error because of certain business deductions taken by Mr. Nix in calculating his adjusted gross income for tax purposes. The details of the federal tax return show that Mr. Nix deducted as business expenses (a) depreciation in the amount of $10,979, (b) office expenses of $4,465, and (c) utility costs of $5,382. Mrs. Nix is apparently urging this Court to conclude that these deductions were not legitimate business expenses affecting Mr. Nix's true earnings from his plumbing business. Her argument seems to be based on the proposition that Mr. Nix was operating his business out of his home and that these deductions were, in actuality, non-deductible personal living expenses.

¶4. We conclude that this issue is procedurally barred because of Mrs. Nix's failure to properly raise it before the chancellor. Mrs. Nix made no argument at trial that any of these expenses were not legitimate costs for Mr. Nix to do business. Overlooking her failure to properly raise the issue before the chancellor, Mrs. Nix's brief to this Court points to nothing in the record that would prove that the deductions were inappropriate (a) under federal laws relating to taxation, (b) under principles of accounting, or (c) under case law interpreting Section 43-19-101 of the Mississippi Code. Her entire argument on the point consists of itemizing the three deductions, pointing out that Mr. Nix operated the business out of his home, and then making the mathematical calculation of what Mr. Nix's adjusted gross income would be without consideration of these deductions.

¶5. There can be little doubt that legitimate costs of doing business for a self-employed individual are a proper consideration in determining income available to meet child support obligations. Section 43-19-101(3) states that its purpose is to "[d]etermine gross income from all potential sources that may reasonably be expected to be available . . . ." Miss. Code Ann. 43-19-101(3) (Rev. 1993). Funds legitimately spent in the pursuit of self-employed income could not, of course, "reasonably be expected to be available" to meet child support obligations. The chancellor, in determining adjusted gross income for child support, is not absolutely bound by figures reported by the obligor on his tax return; however, tax returns are routinely admitted into evidence as having some probative value on the question in proceedings where income is an issue. *Wright v. Stanley*, 700 So. 2d 274, 282 (Miss. 1997); *Westbrook v. Oglesbee*, 606 So. 2d 1142, 1143 (Miss. 1992); *Smith v. Smith*, 607 So. 2d 122, 125 (Miss. 1992).

¶6. To the extent that Mrs. Nix contended, for whatever reason, that Mr. Nix's tax returns did not fairly reflect his actual adjusted gross income for child support, it was her obligation to present evidence or argument, based on the law or on logically-defensible premises, as to why the returns should be disregarded in whole or in part. Assuming that Mrs. Nix contends that Mr. Nix was deducting expenses related to his personal living costs as business expenses - a conclusion we can reach only through speculation because of her failure to articulate the basis for her argument either before the trial court or in her brief to this Court - she had the burden of persuasion on the point.

¶7. The only time anything related to the matters now argued in this appeal came up at the trial level was when the chancellor, in his opinion, voiced concern over the amount of the figure taken for depreciation,

which was $10,544. However, his concern was not with the legitimacy of the deduction, but rather with the notion that even legitimate depreciation does not represent an actual cash outlay. Therefore, the chancellor reflected as to whether actual cash available to pay child support could arguably be higher than reflected in a business accounting that included depreciation. Nevertheless, the chancellor overcame his concerns and accepted the fact that Mr. Nix's tax return accurately reflected his income from his plumbing business. We can reverse the chancellor as to such findings of fact only if we find him to be manifestly in error. *Wallace v. Bond*, 745 So. 2d 844 (¶9)(Miss. 1999). The decision not to disregard a facially-legitimate depreciation deduction in computing the actual income derived by the owner from a sole proprietorship is not, in the view of this Court, such an abuse of discretion that we ought to interfere and set aside that ruling.

¶8. The proposition that these deductions were, in actuality, personal living expenses disguised as business deductions was not squarely presented to the chancellor for determination. This Court cannot put a chancellor in error as to a matter upon which he was not offered the opportunity to rule. *Dunaway v. Dunaway*, 749 So. 2d 1112 (¶24)(Miss. Ct. App. 1999). We decline to consider this question, which was, in all events, only raised by implication by Mrs. Nix in her appeal.

## II.

### Failure to Award Attorney's Fees

¶9. In her complaint for divorce, Mrs. Nix requested that Mr. Nix be required to pay her the reasonable costs of representation in the proceeding. At trial, Mrs. Nix testified to receiving bills for attorney's fees totaling some $9,000. None of the actual statements were introduced into evidence. The chancellor's decision was silent as to attorney's fees, the result being, of course, that no fees were allowed. However, the chancellor's silence on the matter deprives this Court of the chancellor's reasoning in denying Mrs. Nix's request.

¶10. Nevertheless, a number of considerations affecting the propriety of an award of attorney's fees are evident on the face of the record. First among those is the fact that Mrs. Nix never testified as to her inability to pay the fees. There was evidence that she was gainfully employed although her future earning ability for the short run would possibly be diminished by the fact that she had voluntarily elected to return to college to work on an advanced degree. The record shows that neither Mr. Nix nor Mrs. Nix had the present ability to retire a $9,000 attorney's bill so that, whichever party was ultimately responsible for her attorney's fees, the money would have to come from that party's future earnings.

¶11. Additionally, the case of *McKee v. McKee* set out a number of considerations that the chancellor must evaluate in determining the propriety of an award of attorney's fees in a divorce proceeding. *McKee v. McKee,* 418 So. 2d 764 (Miss. 1982). Besides some evidence of the requesting party's inability to pay, the court must consider such matters as the difficulty of the case, the time and labor reasonably involved in offering adequate representation, and the customary charges in the community for similar services. *Id.* at 767. In the absence of the actual statements or any supporting evidence concerning the nature of the services provided, the hourly rate, or any other pertinent details, the chancellor simply did not have the necessary evidence to make those findings under *McKee v. McKee* that are necessary to support an award of attorney's fees. Mrs. Nix had the burden of presenting competent evidence to support her request for an award of attorney's fees. *Benson v. Benson*, 608 So. 2d 709, 712 (Miss. 1992) ("[I]f the record is insufficient to demonstrate the wife's inability to pay the attorney's fees, then an award of the fees is an abuse of discretion.") We conclude that, on the face of the record, there is inadequate information upon

which the chancellor could properly base an award of attorney's fees, and we, therefore, decline to find error in the fact that the chancellor's decision was silent on the subject.

¶12. **THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**SOUTHWICK, P.J., IRVING, MOORE, AND THOMAS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE, J.**

**BRIDGES, LEE, AND MYERS, JJ., NOT PARTICIPATING.**

KING, P.J., DISSENTING:

¶13. I respectfully dissent from the majority opinion herein. The majority, without reference to any authority, holds that business depreciations may be used to reduce adjusted gross income for purposes of determining child support pursuant to Miss. Code Ann. §43-19-101 (Supp. 1999). Such a holding would appear to conflict with §43-19-101, which sets forth the method of determining adjusted gross income for purposes of calculating child support.

¶14. Section 43-19-101(3)(a) states, "The amount of 'adjusted gross income' as that term is used in subsection (1) of this section shall be calculated as follows:

(a) Determine gross income from all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to, the following: wages and salary income; **income from self employment**...."

¶15. Mr. Nix sought to establish his income by introduction of his return. Included as a part of that tax return was Schedule C for a sole proprietorship. Line 1 of Schedule C requests gross receipts or sales by the business. On this line, Mr. Nix acknowledged gross receipts of $244,226.00. From this sum Mr. Nix is required to calculate gross income and enter that amount on Schedule C, line 7.

¶16. In arriving at gross income, Mr. Nix is allowed to subtract from his gross receipts the costs of goods sold. Schedule C allows (1) labor costs, (2) materials and supplies, and (3) a catch all of other costs, in identifying those sums to be expenditures from gross receipt as the costs of production. Mr. Nix calculated the total of these items as $98,633.00. He subtracted $98,633.00 from $244,226.00 and reflected gross income of $145,593.00 on line 7 of Schedule C. Pursuant to 43-19-101(3)(a) it is the figure of $145,597.00, which should have been used to determine adjusted gross income.

¶17. In determining adjusted gross income under 43-19-101(b) the Court should have only excluded , "(1) federal, state and local taxes, (2) social security contributions, and (3) retirement and disability contributions except any voluntary . . . contributions."

¶18. The chancellor went far beyond what is permitted by §43-19-101(b). In addition to taxes, social security and retirement, the chancellor deducted (1) advertising of $110.00, (2) depreciation of $10,979.00. (3) insurance of $4,258.00, (4) interest of $2,656.00, (5) professional fees of $610.00, (6) office expense of $4,465.00, (7) leases of $1,893.00, (8) repairs of $575.00, (9) supplies of $6,254.00, in addition to those included in the $98,633.00, (10) taxes of $10,577.00, (11) utilities of $5,382.00, (12) bank charges of $506.00, (13) sub contracts of $56,709.00, and (14) fuel of $3,137.00 for a total of

$108,11.00.

¶19. These additional deductions of $108,111.00 resulted in Mr. Nix claiming a gross income of only $37,482.00. These items are not deductions pursuant to § 43-19-101(b). They therefore should not have been used by the chancellor to reduce adjusted gross income.

¶20. While these items cannot be used to reduce the actual amount of adjusted gross income, they are matters in equity which the chancellor should be permitted to consider in setting child support. However, should the chancellor chose to give equitable consideration to these matters, he should pursuant to either § 43-19-101(2) or (4) make appropriate written findings.

¶21. The chancellor did not properly apply § 43-19-101 and offered no reasons for the failure to do so. Because the chancellor failed to follow the dictates of §43-19-101 in his calculation of adjusted gross income, this case should be reversed.

¶22. The majority suggests that this issue was not addressed by Mrs. Nix, but rather was only raised at the trial level when the chancellor expressed reservations about the deduction for depreciation. That is simply not consistent with the record. These matters were first called to the court's attention by Mrs. Nix's attorney during his examination of Mr. Nix.

¶23. On page 51 of the transcript, it was established that Mr. Nix deducted the cost of utilities at his house as a business expense, and also that he deducted as depreciation almost $11,00.00 which was not money paid out of his pocket. Contrary to the suggestion of the majority, this was in fact a matter identified and laid before the court by Mrs. Nix.

¶24. When the hearing concluded on January 29, 1999, the record reflects that the chancellor received no oral argument from either party. On February 5, 1999, the chancellor wrote the attorneys for the parties, wherein he offered his findings and opinion. It was in this letter, that the chancellor took up Mrs. Nix's question of whether depreciation was a proper deduction in determining adjusted gross income.

¶25. The majority opinion infers that any facially legitimate tax deduction allowed to a self employed person, should be considered in determining adjusted gross income for purposes of § 43-19-101. Indeed if that were true, then it would also appear that any facially legitimate tax deduction allowed to a salaried individual should also be considered in the determination of his adjusted gross income. Without regard to whether either of these is meritorious, I suggest that they are not the law.

¶26. Section 43-19-101 provides that whether you are salaried or self employed, the only deductions allowable from gross income to determine adjusted gross income are (1) federal, state and local taxes, (2) social security, and (3) mandatory retirement and disability contributions. *Osborne v. Osborne*, 724 So. 2d 1121 (¶19) (Miss. Ct. App. 1998).

¶27. Where the chancellor, without explanation, disregarded the clear language of §43-19-101, I would hold it to be an abuse of discretion and reverse and remand.

**PAYNE, J., JOINS THIS SEPARATE OPINION**.