722 So.2d 731 (1998)
Anderson WHITE, II, Appellant,
v.
Cora Gaultney WHITE, Appellee.
No. 97-CA-00621 COA.
Court of Appeals of Mississippi.
October 13, 1998.
David M. Sessums, Vicksburg, Attorney for Appellant.
Richard E. Smith, Jr., Vicksburg, Attorney for Appellee.
Before THOMAS, P.J., and KING and SOUTHWICK, JJ.
KING, J., for the Court:
¶ 1. Anderson White, Jr. and Cora Gaultney White were granted a divorce in the Warren County Chancery Court on the ground of irreconcilable differences. Feeling *732 aggrieved by the chancellor's division of martial property and the amount of child support awarded, Mr. White has appealed and assigned the following errors:
1. The lower court erred in divesting Appellant of title to the marital residence acquired during the marriage of the parties.
2. The lower court erred in setting the amount of child support. We affirm.

Facts
¶ 2. The Whites were married on September 16, 1992. One child was born to that union on November 9, 1995. The parties separated on December 24, 1995, when Mrs. White, along with the minor child, left the marital domicile to reside with her mother.
¶ 3. On January 9, 1996, Mrs. White filed for divorce in the Warren County Chancery Court alleging habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. On April 29, 1997, the parties were granted a divorce on the ground of irreconcilable differences.
¶ 4. Mrs. White, along with her mother, owned two homes in Vicksburg. When first married, the Whites lived rent free in one of those homes. Approximately two months prior to their separation, the Whites purchased a home. The Whites made no down payment upon this purchase. Instead one of the homes, owned jointly by Mrs. White and her mother, was used as collateral to ensure payment of the purchase price of the marital residence. This same home was also used as collateral for a loan to purchase a Nissan truck, the couples's only other marital asset.[1]
¶ 5. Mrs. White, who has a high school education, works as a cosmetologist earning approximately $1200 per month after expenses and tax deductions. She operates the business out of one of the jointly owned homes.
¶ 6. Mr. White, who has a college degree, has been employed by Warren-Yazoo Mental Health and the U.S. Corp of Engineers. The highest salary received by Mr. White was $17,500 from Warren-Yazoo Mental Health. Mr. White was unemployed at the time of this divorce and had been unemployed since November 22, 1996.
¶ 7. After the separation, Mr. White purchased two cars (a 1994 Mazda and 1992 Camaro). He testified that these cars were purchased out of depression, to build up his self-esteem. He also testified that both vehicles were being repossessed.
¶ 8. The chancellor awarded Mrs. White sole physical custody of the minor child. He also awarded her the sole use and possession of the marital domicile and the baby's furniture. She was ordered to pay credit card debts of $1700 and $3200.
¶ 9. Mr. White was awarded all household furnishings and was ordered to pay a $3500 credit card debt. Mr. White was ordered to pay $178.50 a month in child support.[2] Mr. White was receiving $780 per month in unemployment benefits at the time of the divorce.

Discussion

I. DID THE CHANCELLOR ERR IN DIVESTING ANDERSON OF TITLE TO THE MARITAL RESIDENCE ACQUIRED DURING THE MARRIAGE?
¶ 10. Mr. White argues that the chancellor committed an abuse of discretion in awarding Mrs. White sole use and possession of the marital residence. In support of this contention, he states that Mrs. White is the joint owner of two other homes in Vicksburg and that he contributed a substantial amount of money ($3500) toward the procurement of the marital domicile.[3]
¶ 11. Mrs. White counters that the chancellor did not commit manifest error in awarding the marital residence to her because it was secured by a home which she owned *733 jointly with her mother. Mrs. White testified that Mr. White made no financial contribution toward the procurement of the marital residence.
¶ 12. In explanation of his decision to divest Mr. White of title to the marital residence, the chancellor made the following on the record finding:
I'll be very frank with you, Mr. White, you can't afford [the marital residence], there's no equity in it. You will execute a deed to Mrs. White for that house.... You can have everything in the house except the baby furniture, but you will vacate the house. Everything else in the house you can have.
¶ 13. On the date of the hearing, April 14, 1997, Mr. White had been unemployed since November 22, 1996, and was receiving $780 per month in unemployment benefits. The two cars which Mr. White had purchased after the parties separated were being repossessed, and the marital residence was secured by assets of Mrs. White's separate estate. Clearly, Mr. White lacked the resources to make the monthly payments on the home or to maintain it.
¶ 14. "This Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Knutson v. Knutson, 704 So.2d 1331, 1332 (Miss.1997), (quoting Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994)).
¶ 15. We note that the chancellor did perform an equitable division of the marital assets. In addition to being awarded all the household furnishings, excluding the baby's furniture, Mr. White was awarded the Buick automobile which was already in his possession.
¶ 16. Based on the record before this Court, it does not appear that the chancellor abused his discretion in the division of the marital assets.

II. DID THE CHANCELLOR ERR IN SETTING THE CHILD SUPPORT AWARD?
¶ 17. Mr. White argues that the chancellor erred in calculating child support payments against his gross income, instead of his adjusted gross income, as prescribed by the child support guidelines. The guidelines do, in fact, require that child support be calculated upon a non-custodial parent's adjusted gross income. Pursuant to Miss.Code Ann. § 43-19-101(3)(b) (Rev.1993), adjusted gross income is defined as that amount which remains after deductions of federal, state, and local taxes, social security, retirement, and disability contributions.
¶ 18. At the time of the hearing, Mr. White was not employed; however, he received $780 per month in unemployment compensation benefits. Because Mr. White was unemployed, the chancellor based the child support on Mr. White's potential earning capacity. In determining Mr. White's earning capacity, the chancellor considered Mr. White's educational level, past earning record, and employability. Based upon these considerations, the chancellor determined that Mr. White should be able to earn sufficient income to justify a child support award of $178.50 per month.
¶ 19. Additionally, Mr. White argues that the chancellor abused his discretion in wholly disregarding the other child for whom he pays monthly support. Mr. White states in his brief that he has a $100 monthly support obligation for another child. He states that both child support awards equal 35.70% of his total income.[4]
¶ 20. Mr. White seems to suggest that any amount of child support should be predicated upon his unemployment compensation benefits and not his potential earning capacity. We disagree.
*734 ¶ 21. In Grogan v. Grogan, 641 So.2d 734, 740 (Miss.1994), our supreme court upheld a chancellor's upward deviation from the guidelines due, in part, to the chancellor's skepticism about the parent's true earning capacity. That case is not dissimilar to the situation confronted by the chancellor in the case at bar. We hereby hold that where temporary financial reverses create an unreliable measure for an award of child support, the chancellor may in his discretion predicate an award on reasonable earning capacity.
¶ 22. At the time of this divorce, Mr. White had obtained a baccalaureate degree. The chancellor estimated Mr. White's minimum earning capacity as $1274.75. These imputed wages closely mirror the wages Mr. White received from his previous employer while having only a high school diploma. The chancellor, without abusing his discretion, could have imputed a higher earning capacity to Mr. White based on his completion of college.
¶ 23. A chancellor's deviation from the Mississippi child support guidelines must be supported by an on the record finding that said deviation is warranted. Rakestraw v. Rakestraw, 96-CA-0118-COA (¶ 13) (Miss. 1998); Miss.Code Ann. § 43-19-101(1) (Rev. 1993). In the case at bar, the chancellor made the following on the record finding:
It's kind of hard to fix child support for a guy who is not working. But it appears to me, Mr. White, you have the ability to work, you've got a college education. And it would seem to me that if you can work, you can make at least as much money as [Mrs. White] makes, particularly in light of our societal general preference for male employees. She makes twelve hundred and seventy-four dollars and seventy-five cents a month after her basic deductions, which the Court finds are all reasonable. And if you made that you'd pay $178.50 a month in child support. I think you can make that much, and I think you need to make that much. So the Court will set the child support based on that calculation and on that reasoning at $178.50 per month commencing on the first day of May, 1997.
¶ 24. As dictated by recent case law, the chancellor made "a specific finding on the record that the application of the guidelines would be unjust or inappropriate." See Knutson, 704 So.2d at 1334; Johnson, 650 So.2d at 1287. The chancellor also stated on the record that he considered Mr. White's other monthly child support payments in setting the subject obligation.[5]
¶ 25. Awards of child support predicated upon earning potential are reviewable under an abuse of discretion standard. "[A]n award of child support is a matter within the discretion of the chancellor and we will not reverse that determination unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992). Further, "[t]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." Grogan, 641 So.2d at 741.
¶ 26. Faced with the almost impossible task of setting child support for an unemployed parent, we decline to hold the trial court to absolute mathematical precision in the calculation of percentages.
¶ 27. Based on these specific on the record findings, the chancellor neither abused his discretion in distributing the marital assets nor in calculating the child support award.
¶ 28. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN and THOMAS, P.JJ., and DIAZ, HINKEBEIN, PAYNE and SOUTHWICK, JJ., concur.
BRIDGES, C.J., dissents with separate written opinion joined by COLEMAN and HERRING, JJ.
BRIDGES, C.J., dissenting:
¶ 29. I respectfully dissent from the majority opinion on both issues presented by this *735 appeal. This Court has a limited standard of review in domestic relations matters. "[T]his Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994) (citing McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994)). As to a question of law, however, "the manifest error/substantial evidence rule has no application and we conduct a de novo review. Notwithstanding our respect for and deference to the trial judge, on matters of law it is our job to get it right. That the trial judge may have come close is not good enough." Estate of Homburg, 697 So.2d 1154, 1157 (Miss.1997) (citations omitted).
¶ 30. After a careful review of the record in this case, I find that the trial judge did not follow the law requiring written findings or specific findings of fact and conclusions of law on the record. Accordingly, this case should be reversed and remanded.

MARITAL DOMICILE
¶ 31. The chancellor was manifestly in error in divesting Anderson White of his onehalf interest in the marital domicile without the required findings of fact and conclusions of law. Upon the dissolution of a marriage, the chancery court has the discretion "to ... divide real and personal property, including the divesting of title,...." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). However, to ensure the chancellor did not abuse the discretion granted to him and to aid appellate review, a detailed findings of fact and legal conclusions drawn from those findings are required on the record to explain the basis for the financial disposition. Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss.1997); Ferguson, 639 So.2d at 928.
¶ 32. In the present case, the chancellor divested Anderson of his one-half interest in the marital domicile without the required findings. Upon the record as it now stands, this Court is unable to determine whether the property distribution by the chancellor is fair and equitable. Therefore, this case should be reversed and remanded for the chancellor to set out the findings of fact and conclusions of law that led him to order the divestment of Anderson's one-half interest in the marital domicile.

CHILD SUPPORT AWARD
¶ 33. Anderson White was ordered to pay $178.50 monthly as child support. This amount computes to twenty-six percent of Anderson's adjusted gross income and far exceeds the statutory guideline of fourteen percent.
¶ 34. Miss.Code Ann. § 43-19-101(Rev.1993) expressly provides:
(1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state....
(2) The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.
And § 43-19-103 gives the criteria for overcoming the presumption that the above guidelines are appropriate:
The rebuttable presumption as to the justness or appropriateness of an award or modification of a child support award in this state, based upon the guidelines established by Section 43-19-101, may be overcome by a judicial or administrative body awarding or modifying the child support award by making a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined according to the following criteria:
(a) Extraordinary medical, psychological, educational or dental expenses.
(b) Independent income of the child.
(c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents' incomes or expenses.

*736 (e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.
(h) Total available assets of the obligee, obligor and the child.
(i) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.
¶ 35. The chancellor did not comply with §§ 43-19-101 and 43-19-103. The statutes, as written, are clear and unambiguous. Both mandate that any deviation from the guidelines must be upon a written finding or specific finding explaining why compliance would be unjust or inappropriate. The legislature's use of the word "shall" in § 43-19-101 leaves the trial judge no discretion. Findings of fact and conclusions of law must be on the record as to the reasons underlying the chancellor's departure from the statute. Statutory demands are mandatory and not permissive. Evans v. Boyle Flying Service, 680 So.2d 821, 827 (Miss.1996); Estate of Stowers v. Jones, 678 So.2d 660, 662 (Miss.1996); Ivy v. Harrington, 644 So.2d 1218, 1221(Miss.1994); American Sand & Gravel Co. v. Tatum, 620 So.2d 557, 563 (Miss.1993). The chancellor's failure to make such findings is manifest error.
¶ 36. According to § 43-19-101(1), fourteen percent of Anderson White's adjusted gross income is presumed to be the proper amount to be awarded as child support for one child. The presumption that the statutorily imposed fourteen percent is just or appropriate can be rebutted by "making a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate" applying the enumerated criteria to the particular case. No written finding or specific finding explaining the deviation from the statutory guideline was given by the chancellor before ordering the child support award amounting to twenty-six percent of Anderson's adjusted gross income. Instead, the chancellor reasoned:
[Cora] makes twelve hundred and seventyfour dollars and seventy-five cents a month after her basic deductions, which the Court finds are all reasonable. And if [Anderson] made that you'd pay $178.50 a month in child support. I think you can make that much, and I think you need to make that much. So the Court will set the child support based on that calculation and on that reasoning at $178.50 per month commencing on the first day of May, 1997.
Because the chancellor did not follow the law mandated in §§ 43-19-101(2) and 43-19-103, the chancellor was manifestly wrong and the case should be reversed and remanded for the chancellor to make the required findings on the record stating why the application of the guidelines would be unjust or inappropriate in this case.
¶ 37. In calculating Anderson's adjusted gross income, the chancellor must utilize the formula delineated in § 43-19-101(3). The subsections applicable to this case follow:
(3) The amount of "adjusted gross income" as that term is used in subsection
(1) of this section shall be calculated as follows:
(a) Determine gross income from all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to, the following: wages and salary income; income from self-employment; income from commissions; income from investments, including dividends, interest income and income on any trust account or property; absent parent's portion of any joint income of both parents; workers' compensation, disability, unemployment, annuity and retirement benefits, including an individual retirement *737 account (IRA); any other payments made by any person, private entity, federal or state government or any unit of local government; alimony; any income earned from an interest in or from inherited property; any other form of earned income; and gross income shall exclude any monetary benefits derived from a second household, such as income of the absent parent's current spouse;
(b) Subtract the following legally mandated deductions:
(i) Federal, state and local taxes. Contributions to the payment of taxes over and beyond the actual liability for the taxable year shall not be considered a mandatory deduction;
(ii) Social security contributions;
(iii) Retirement and disability contributions except any voluntary retirement and disability contributions;
(c) If the absent parent is subject to an existing court order for another child or children, subtract the amount of that court-ordered support;
(d) If the absent parent is also the parent of another child or children residing with him, then court may subtract an amount that it deems appropriate to account for the needs of said child or children;
(e) Compute the total annual amount of adjusted gross income based on paragraphs (a) through (d), then divide this amount by twelve (12) to obtain the monthly amount of adjusted gross income.
Upon conclusion of the calculation of paragraphs (a) through (e), multiply the monthly amount of adjusted gross income by the appropriate percentage designated in subsection (1) to arrive at the amount of the monthly child support award.
¶ 38. Anderson's gross income must be decreased by the existing court-ordered support of his child from a previous relationship. This adjusted gross income is divided by twelve to obtain the monthly amount of adjusted gross income. Lastly, the monthly amount of adjusted gross income is multiplied by fourteen percent to obtain the appropriate amount of the child support award.
¶ 39. Applying the formula to the present case:

Anderson's monthly income $780.00
Less prior child support award 100.00
 _______
 $680.00
Multiplied by the statutory percentage × 14%
 _______
 $ 95.20

¶ 40. Any deviation for a specific need must be supported by a determination of the chancellor "at a time real, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children." Ferguson, 639 So.2d at 932. In the case sub judice, no such determination of any special need or circumstance of the child was made by the chancellor nor was the award in excess of the statutory amount supported by substantial evidence in the record.
¶ 41. This Court has consistently required chancellors to justify any departure from the statutory guidelines when setting child support awards in a detailed, written findings of fact and conclusions of law. Having the benefit of the chancellor's analysis in calculating the amount of child support to be paid by the non-custodial parent enables this Court to determine if the chancellor properly exercised his discretion.
¶ 42. In McEachern v. McEachern, 605 So.2d 809, 813-14 (Miss.1992), the chancellor's departure from the statutory guidelines in determining the appropriate amount of child support was not error, because the record included a written finding, as required by § 43-19-103, that the guidelines were inappropriate in that particular case and the finding was supported by substantial evidence in the record.
¶ 43. In Draper v. Draper, 658 So.2d 866, 870 (Miss.1995), the absence of a specific finding on the record that the application of the statutory guidelines would be unjust or inappropriate made the chancellor's award of child support manifestly erroneous.
¶ 44. Where the chancellor has made no findings on the record as required under Miss.Code Ann. § 43-19-101 and § 43-19-103, this Court has reversed and remanded the case for appropriate findings of fact and conclusions of law. After a careful review of the record in this case, I have found no findings.
*738 ¶ 45. Thus, the chancellor erred in ordering Anderson to pay child support in an amount exceeding the statutorily mandated amount without making a specific finding of fact and conclusion of law on the record that the application of the statutory guidelines would be unjust or inappropriate.
¶ 46. The present case can be distinguished from Grogan v. Grogan, 641 So.2d 734 (Miss. 1994), which was cited by the majority in support of the chancellor predicating the child support award on the earning potential of Anderson, not his actual earnings. In Grogan, the husband's actual earnings were in dispute and the chancellor had "reservations as to [the husband's] actual earnings." Id. at 740. In this case, Cora did not allege that Anderson had a source of income in addition to his monthly unemployment benefits of $780. Anderson's arrearage in his current monthly payments and his previous court-ordered support of $100 monthly for another child were detailed in the record. Further, Anderson obtained his college degree and held two jobs during the marriage. Although currently unemployed, Anderson testified he is actively seeking employment.
¶ 47. In Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955), our supreme court directed the lower court to award reasonable sums for support of the minor child "in the light of conditions as they now prevail," including (1) the earning capacity of the parent, (2) his entire sources of income, (3) the necessary living expenses of the parent, and (4) other facts and circumstances bearing on the subject that might be shown by the evidence.
¶ 48. Clearly, the chancellor may consider Anderson's earning capacity; however, the child support award must be based on Anderson's ability to pay. In Dunn v. Dunn, 609 So.2d 1277, 1285 (Miss.1992), the award of child support was reversed and remanded when our supreme court looked at the "financial resources apparently reasonably available" and found "[p]ayment of the amount of child support awarded [was] impossible based on the figures presented." Id. My review of the record persuades me that Anderson will be unable to pay the child support award as ordered by the chancellor. Without adding the normal living expenses of Anderson and the $178.50 a month for child support, Anderson's debt obligations exceed his net income by $62 a month.[6]
When entering a child support decree, the chancellor should consider all circumstances relevant to the needs of the children and the capacities of the parties. The reasonable needs of the children are obviously the beginning point in such inquiry. There is always some minimum level of food, clothing, shelter, day care, education, medical care and the like that must be provided. Above that, what is reasonable turns on the circumstances
 and one of the major circumstances is the financial resources reasonably available to each parent.
Tedford v. Dempsey, 437 So.2d 410, 422 (Miss.1983).
¶ 49. In determining the amount of child support to be awarded, the chancery court must take into consideration the financial ability of the non-custodial parent to make the payments as well as the needs and circumstances of the child who is to be the recipient of such support. McInnis v. McInnis, 227 So.2d 116, 117 (Miss.1969).
¶ 50. In the present case, the excessive child support award was not based on the needs and circumstances of the child; the chancellor disregarded the inability of Anderson to pay twenty-six percent of his adjusted gross income as child support; the award was punitive in nature; and the final decree awarding child support in an amount exceeding the statutory guidelines should be reversed and remanded.
*739 ¶ 51. Further, the chancery court has authority under its continuing jurisdiction to modify any final decrees relative to child support. Campbell v. Campbell, 357 So.2d 129, 130 (Miss.1978); Miss.Code Ann. § 93-5-23 (Rev.1994). Thus, the final decree ordering Anderson to pay reasonable child support calculated on his current adjusted gross income may be modified in the future if the chancellor finds the award to be grossly inadequate based on a material change of circumstances.
¶ 52. Accordingly, the chancellor was manifestly in error in awarding child support in excess of the statutory guideline without making the mandatory written finding or specific finding on the record. Absent such a written finding, we are unable to proceed further in determining whether the chancellor abused his discretion in awarding child support in the amount of $178.50 a month.
¶ 53. For the foregoing reasons, this case should be reversed and remanded for the chancellor to make appropriate and specific findings of fact and conclusions of law on the issue of the equitable division of marital property as required under Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), and on the issue of child support as required under Miss.Code Ann. §§ 43-19-101 and 43-19-103 (Rev.1993), and for further proceedings that are consistent with the terms of this opinion including any additional testimony which would assist the chancellor in making such findings.
COLEMAN and HERRING, JJ., join this separate opinion.
NOTES
[1] Mr. White testified at the hearing that the Nissan had been totaled and it was no longer in his possession.
[2] Mr. White has another child from a previous relationship.
[3] The parties purchased the marital domicile in October 1995, a mere two months prior to the separation.
[4] At the time of the divorce hearing, Mr. White was obligated to pay $100 per month in child support for another child. In the case sub judice, the chancellor set Mr. White's child support obligation at $178.50 based on a minimum projected earning capacity of $1274.75. Under the support guidelines, the recommended support for two children is 20% of adjusted gross income. Twenty percent of Mr. White's adjusted gross income of minimum projected earning capacity is $254.80. The total Mr. White is to pay for both children is $274.50 or 21.5% of minimum projected earning capacity. This upward deviation enjoys support in the record and was specifically addressed by the chancellor in his findings of fact.
[5] The chancellor's award exceeded the recommended guidelines by 1.5%.
[6] Anderson's prior legally mandated debt and the marital liabilities imposed upon Anderson by the chancellor are:

Existing court-ordered child support $100
National Credit (outstanding balance$ 1,700) 142
Visa  Chase Bank (outstanding balance$3,200) 267
Visa  Merchant's Bank (outstanding balance$4,000) 333
 ____
 $842