IRVING, J.,
for the Court.
¶ 1. Marvin Dodson filed a petition to modify decree in which he claimed that a material change in circumstances had occurred that had affected his income. He requested a decrease in his child support payments. Tonoa (Malone) Dodson, his former wife, answered and filed what she denoted as a “counter-petition.” In her petition, she denied Marvin’s assertion that a modification was warranted and requested reasonable attorney’s fees. The Chancery Court of DeSoto County granted Marvin’s request to modify but also granted Tonoa’s request for attorney’s fees. Tonoa, feeling aggrieved by the decision of the chancellor, appeals and assigns as error four issues which we aggregate into a single question: whether the chancery court erred in modifying the amount of child support Marvin was required to pay pursuant to the prior divorce decree.
¶ 2. Ascertaining no error, we affirm.
FACTS
¶ 3. Marvin Dodson and Tonoa (Malone) Dodson were lawfully married on April 13, 1991. They were granted a divorce on December 3, 2001, on the ground of irreconcilable differences. Incorporated into the divorce decree were the terms and conditions of the parties’ separation agreement in which Marvin agreed to pay child support in the amount of $1,000 per month.
¶ 4. While he was married, Marvin worked as a machine operator at Cargill Incorporated and also maintained a car washing business. Marvin had several car-washing contracts with post offices in northern Mississippi and the metropolitan Memphis area. He also had a contract with St. Luke Church of God in Christ to periodically wash the church’s vans. Additionally, he periodically washed private vehicles.
¶ 5. In January of 2002, Marvin was informed by the Germantown and Collier-ville, Tennessee post offices that, in order to maintain his contracts with them, he needed to purchase water retrieval equipment. Marvin did not purchase this equipment. Consequently, in December 2002, he was notified by the Germantown post office that his contract was terminated because “environmental regulations require that washing services must have water retrieval equipment when [sic] enables them to keep used water and washing materials out of ground water and sewers.”
*1087 ¶ 6. On April 2, 2002, Marvin filed a petition to modify the divorce decree, claiming that there had been a material change in circumstances concerning his income level. He specifically stated that since the final divorce decree was entered, he had lost one of his jobs and that his income had decreased.
¶ 7. Tonoa filed an answer and what she called a “counter-petition.” In this petition, she denied all allegations in Marvin’s petition and asked that his petition be dismissed. She also asked for an increase in child support, asserting that there had been a material and substantial change in circumstances of the children, justifying an increase. She requested reasonable attorney’s fees for defending against Marvin’s petition.
¶ 8. The trial court denied Tonoa’s request for modification and granted Marvin’s request, reducing his child support obligation to $593 per month. The trial court also ordered Marvin to pay Tonoa $1,900 in attorney’s fees.
DISCUSSION AND ANALYSIS OF THE ISSUE
¶ 9. Tonoa first argues that the trial court erred in modifying the amount of child support that Marvin was required to pay. She explains that Marvin’s loss of contracts was voluntary in that he failed to purchase the equipment necessary to maintain the contracts. She further asserts that Marvin’s loss of contracts did not impede his ability to pay his monthly child support.
¶ 10. Marvin counters that the loss of his contracts was involuntary, that this loss substantially affected his income, and that a modification was warranted under the circumstances.
¶ 11. After hearing and reviewing all the evidence, the chancellor found that a substantial and material change had occurred in Marvin’s income to warrant a modification of child support. Specifically, the chancellor found that' Marvin’s car washing business was “greatly curtailed and all but eliminated” when his main employer, the U.S. Postal Service of Ger-mantown, refused to continue his employment. According to the chancellor, there was no evidence that, at the time of the divorce, the postal service would, at some point in the future, disallow Marvin’s services. Consequently, pursuant to Mississippi Code Annotated section 43-19-101 (Rev.2000), the chancellor set Marvin’s child support at $593 a month, or twenty-two percent of his adjusted gross income.[1]
¶ 12. We find that the chancellor did not err when he found that a substantial and material change had transpired in Marvin’s employment as to warrant a reduction in his child support payments.
¶ 13. The provisions of an agreement dealing with child support, which are incorporated in a final decree of divorce, may be modified under the proper circumstances. Brown v. Brown, 566 So.2d 718, 721 (Miss.1990). “A child support award can be altered if it can be shown that there has been a substantial or material change in the circumstance of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified.” Caldwell v. Cald *1088 well, 579 So.2d 543, 547 (Miss.1991) (quoting Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)). The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement. Lahmann v. Hallmon, 722 So.2d 614, 622(¶27) (Miss.1998).
¶ 14. The evidence demonstrates that Marvin maintained both his job with Car-gill Incorporated and his car washing business during the latter part of his marriage and after his divorce for a period of time. As already mentioned, Marvin’s car washing business involved contracts with several post offices. After the divorce, the post offices required him to purchase a water retrieval system to maintain his contracts with them. Marvin did not purchase the equipment.
¶ 15. Tonoa contends that Martin had the financial ability to purchase the equipment but chose not to do so. Consequently, she argues that Marvin voluntarily reduced his income. As proof of Marvin’s ability to purchase the equipment, Tonoa points to the fact that Marvin purchased a car after being notified of the requirement for the water retrieval system.[2] Tonoa also argues that the chancery court erred when it failed to consider Marvin’s earning capacity before allowing modification of the child support. Tonoa cites Selman v. Selman, 722 So.2d 547 (Miss.1998) and White v. White, 722 So.2d 731 (Miss.Ct.App.1998) as authority for her position.
¶ 16. Marvin counters that the chancery court did not err when it did not consider his earning capacity outside of his employment at Cargill and his miscellaneous cash from wash jobs because he was neither underemployed by his own voluntary action or unemployed.
¶ 17. In Selman, the father, a former restaurant manager earning $26,000 a year, quit his job to become a'minister and was making only $700 a month from that job. Selman, 722 So.2d at 550 (¶ 6). After reviewing the chancellor’s ambiguous findings for child support, our supreme court remanded the case and instructed the chancellor to consider the father’s earning capacity, rather than his actual earnings, in setting child support. Id. at 555 (¶ 36).
¶ 18. In White, this court upheld a support order based upon the chancellor’s assessment of an unemployed father.
¶ 19. We find that Selman and White are distinguishable from our case. First, Selman, unlike our case, dealt with a father who voluntarily left his higher paying job for a preaching job that paid substantially less. As we found earlier, Marvin did not voluntarily quit his job. Instead, the post offices released Marvin when he did not purchase the equipment that they required of him as a condition of maintaining his employment. Secondly, White dealt with an unemployed father. Here, Marvin was not unemployed but has maintained his employment at Cargill, the same job he possessed during both the marriage and the period of time of the divorce proceedings. He also continued in this job following the divorce. In fact, he was still employed in this job at the time of the filing of the petition for modification.
¶ 20. The chancellor did not address whether Marvin could have purchased the water retrieval equipment or Marvin’s wage earning capacity. On these facts, we find that the chancellor did not err in failing to do so. There is no evidence that *1089 Marvin conspired with the post offices to impose the requirement that the water retrieval equipment be purchased as a condition of continued employment, and, as the chancellor found, there is no evidence that Marvin knew, at the time of the divorce, that the postal service would disallow his services. We, therefore, can not say that the chancellor clearly erred or was manifestly wrong when he did not consider Marvin’s earning capacity outside of his employment at the time of the modification proceeding.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.

. The chancellor found that Marvin's after-tax income at Cargill Incorporated, his primary employment, for a ten-month period for 2002 was $26,482. He further found that Marvin had earned $1,825 during a three-year period prior to the modification proceedings from his employment with St. Luke Church and that his after-tax income from this venture was approximately $1,500. The chancellor concluded that Marvin’s total after-tax income (for a ten month period) in 2002 was $26,982 or $2,698 a month.

. According to the record, Marvin, purchased a 1994 model year vehicle. The value of the vehicle is not stated.