MAXWELL, J.,
for the Court:
¶ 1. The Washington County Chancery Court granted Robert Evans a downward modification of his child-support payments but ordered him to pay an amount greater than required by the child-support guidelines. While the chancellor’s deviation from these presumptively correct guidelines may be reasonable, his findings of fact are inadequate to support the reduction. Further, because Robert promptly filed a modification action upon his loss of income, the chancellor’s contempt finding and corresponding award of attorney’s fees were improper. The chancellor’s other award of attorney’s fees to Beverly must also be reversed because it lacks sufficient findings and supporting evidence.
¶ 2. We therefore reverse the chancellor’s child-support reduction and remand for the chancellor to make findings regarding the child-support guidelines and deviation criteria. And we reverse and render on the issue of contempt and reverse and remand the chancellor’s assessment of attorney’s fees. Because child-support payments vest as they accrue, we affirm the chancellor’s refusal to relate the modification order back to an earlier date.[1]
FACTS

I. Background,

¶ 3. In December 1998, Beverly and Robert obtained a divorce based on irreconcilable differences. The chancellor incorporated the terms of the parties’ “marital settlement agreement” into his final judgment of divorce. Their agreement called for joint physical and legal custody of the parties’ two children. And it required that Robert pay Beverly $2,000 per month in child support, provide health-insurance coverage for the children, and maintain a life-insurance policy for their benefit.

*1086
II. Modification and Contempt Actions

¶ 4. Robert had served as County Attorney for Washington County for twenty years. In early November 2007, he lost his re-election bid. Soon after, on November 14, 2007, Robert filed a motion to modify his child-support payments. It is undisputed that his net loss of income was approximately $3,500 per month.
¶ 5. The chancellor spent five days hearing the matter. On the third day, January 28, 2009, Beverly filed a motion for contempt based on Robert’s failure to comply with child-support provisions in the 1998 divorce judgment. The chancellor then reset the matter and heard evidence over two more days in March 2009.

III. The Chancellor’s Findings

¶ 6. The chancellor ruled from the bench that Robert was not in contempt for accruing arrearages because he was financially incapable of complying with the original child-support decree.
¶ 7. Then, on May 13, 2009, the chancellor entered a written order. The chancellor found a material change in circumstances and decreased Robert’s child-support obligation from $2,000 to $1,000 for a period of six months. He also required that Robert maintain a life-insurance policy for the benefit of his son[2] and provide his son’s automobile and health insurance. He further ordered Robert pay $1,000 for Beverly’s attorney’s fees, even though his order contained no finding regarding Beverly’s inability to pay her own attorney’s fees, nor any finding on the McKee factors. The chancellor’s order neither mentions contempt nor Robert’s liability for arrearag-es.
¶ 8. The chancellor later entered a second written order on July 28, 2009, for the stated purpose of clarifying his prior order.[3] In this second order, the chancellor found Robert in contempt for defaulting on $14,750 in child-support payments. He required Robert pay two installments of $100 each month until this arrearage is paid. Based on the contempt finding, the chancellor awarded Beverly an additional $1,300 in attorney’s fees.

IV.Issues Presented

¶ 9. Robert now appeals arguing the chancellor erred by (1) finding him in contempt, (2) ordering him to pay Beverly’s attorney’s fees, (3) deviating above the child-support-guideline percentages without sufficient findings, and (4) refusing to relate his modification order back to the date of his originally scheduled hearing.
STANDARD OF REVIEW
¶ 10. “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000). We will not disturb a chancellor’s factual findings unless the chancellor’s decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard. Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009). We do not substitute our *1087 judgment for the chancellor’s, even if we disagree with his findings and would arrive at a different conclusion. Coggin v. Coggin, 837 So.2d 772, 774 (¶ 3) (Miss.Ct.App.2003). When reviewing a chancellor’s interpretation and application of the law, our standard of review is de novo. Tucker v. Prisock, 791 So.2d 190, 192 (¶ 10) (Miss.2001).
¶ 11. We conduct a heightened review when a chancellor simply adopts one party’s findings verbatim. City of Jackson v. Presley, 40 So.3d 520, 522 (¶ 10) (Miss.2010). We do so because adopted findings “are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the trial testimony and exhibits.” Id.
¶ 12. But here we need not apply a heightened review because the chancellor made changes, albeit slight, to Beverly’s proposed findings of fact. Further, the chancellor entered a subsequent order for the stated purpose of clarifying his prior order. This order appears to embody the chancellor’s independent findings, and Robert does not contend otherwise. Therefore, our familiar manifest-error standard applies.
DISCUSSION

I. Contempt

¶ 13. Robert claims that because he promptly petitioned for a reduction in his child-support payments, the chancellor erred by finding him in contempt.
¶ 14. Enforcing compliance with a court order is a matter of civil contempt. Dennis v. Dennis, 824 So.2d 604, 608 (¶ 8) (Miss.2002) (explaining that the primary purpose of a civil contempt order “is to enforce the rights of private party litigants or enforce compliance with a court order”). “An adjudication of contempt is a serious matter and must, in the case of civil contempt, be proven by clear and convincing evidence.” Allred v. Allred, 735 So.2d 1064, 1067 (¶ 10) (Miss.Ct.App.1999) (citing Masonite Corp. v. Int’l Woodworkers of Am., 206 So.2d 171, 180 (Miss.1967)); see also Setser v. Piazza, 644 So.2d 1211, 1216 (Miss.1994); Shelton v. Shelton, 653 So.2d 283, 286 (Miss.1995). Failure to comply with a court order is prima facie evidence of contempt. McIntosh v. Dep’t of Human Servs., 886 So.2d 721, 724 (¶ 11) (Miss.2004). To rebut a prima facie case of contempt, a defendant must show an “inability to pay, that the default was not willful, that the provision [violated] was ambiguous, or that performance was impossible.” Deborah H. Bell, Bell on Mississippi Family Law § 11.05[l][a] (1st ed.2005).
¶ 15. Parties who are unable to comply with court-ordered child-support payments should promptly petition the chancellor for a reduction of support. Thurman v. Thurman, 559 So.2d 1014, 1016 (Miss.1990). “Where a party promptly files for a modification ... of support based on his inability to pay, a finding of contempt is not proper.” Setser, 644 So.2d at 1216; see also Shelton, 653 So.2d at 286-87; Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss.1990), Thurman v. Thurman, 559 So.2d 1014, 1016-17 (Miss.1990); Clower v. Clower, 988 So.2d 441, 445 (¶ 11) (Miss.Ct.App.2008).[4]
¶ 16. Robert suffered a substantial decrease in income after he lost in his reelection bid for county attorney in early *1088 November 2007. He had held the position for twenty years. Robert’s net loss of income was approximately $8,500 per month. Based on his financial inability to comply with the original decree, on November 14, 2007, Robert petitioned for a modification of child support. After he began failing to pay the full amount required by the divorce judgment, Beverly filed her contempt action in January 2009.
¶ 17. The following colloquy from the chancellor’s bench ruling on March 17, 2009, shows he found Robert financially unable to meet his child-support obligation:
By the Court: I guess he hopes, as well as ... we do, that things are going to get better. But the law is that he can’t he [sic] held in contempt if he can’t pay.
[[Image here]]
By the Court: And I was not going to hold him in contempt today.
By [Beverly’s counsel]: I’m sorry to hear that.
By the Court: Well, I don’t think I can, based on the evidenee[.]
But the chancellor apparently later changed his mind. In a written order entered July 28, 2009, the chancellor found Robert in contempt without mentioning his earlier finding of Robert’s inability to pay. The chancellor simply stated, “the Court is of the opinion that [Robert] is in [c]on-tempt of this Court for his failure to pay the sum of $14,750 in child support as ordered by this Court[.]” Other than citing Robert’s failure to make payments, the chancellor offered no other basis for holding him in contempt.
¶ 18. We find the chancellor erred in his contempt ruling. Because Robert promptly filed for a reduction in child-support payments when his financial circumstances changed, the contempt finding was improper. See, e.g., Setser, 644 So.2d at 1216.[5] To be clear though, Robert’s prompt filing of the modification action only precludes a finding of contempt. It does not excuse arrearages. See Thurman, 559 So.2d at 1016-17; Cumberland, 564 So.2d at 847. Robert is still liable for vested child-support payments, as discussed further below.[6]
¶ 19. The dissent relies on speculation and matters outside the record to find, as Beverly suggests on appeal, that the chancellor properly held Robert in contempt based on his actions prior to the November 2007 election. Yet the record shows that the chancellor on June 14, 2008, dismissed Beverly’s previous contempt action. Though she later filed another contempt petition on January 28, 2009, it concerned Robert’s alleged nonpayment of child support since January 2008. Beverly made clear several times during the hearing that she only sought to hold Robert in contempt for his nonpayment from January 2008 forward,[7] and that is apparently what the chancellor did. In fact, Beverly’s attorney admitted that Robert “was caught up” with his support payments in December 2007. There is simply no record support that the chancellor relied on Robert’s *1089 actions prior to the November 2007 election when finding him in contempt.
¶ 20. For these reasons, we reverse and render the chancellor’s contempt finding.

II. Attorney’s Fees

¶ 21. The chancellor first awarded Beverly $1,000 in attorney’s fees incurred in the modification action. He later awarded Beverly an additional $1,300 in attorney’s fees based on his finding that Robert was in contempt. We will address the separate awards in turn.

A. Modification Matter

¶ 22. The matter of awarding attorney’s fees is largely entrusted to the sound discretion of the chancellor. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). We are reluctant to disturb a chancellor’s discretionary determination whether to award attorney’s fees or the amount of any award. Smith v. Smith, 614 So.2d 394, 398 (Miss.1993). Attorney’s fees may only be awarded to a party who has shown an inability to pay his or her own fees. Voda v. Voda, 731 So.2d 1152, 1157 (¶29) (Miss.1999); Pacheco v. Pacheco, 770 So.2d 1007, 1012 (¶ 26) (Miss.Ct.App.2000).[8] When awarding attorney’s fees, chancellors are instructed to make specific findings regarding the recipient’s ability to pay. Hankins v. Hankins, 729 So.2d 1283, 1286 (¶ 13) (Miss.1999). And chancellors should apply the McKee factors in determining the proper amount of the award:
[A] sum sufficient to secure [a] competent attorney is the criterion by which we are directed. The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
McKee, 418 So.2d at 767 (internal citation omitted).
¶ 23. The chancellor awarded Beverly $1,000 in attorney’s fees in the modification action, but made no finding regarding Beverly’s inability to pay her attorney. Nor did he apply the McKee factors. Our supreme court has held that “[a] trial court abuses its discretion by awarding attorney’s fees without first finding that the party is unable to pay the fees.” Hankins, 729 So.2d at 1286 (¶ 13). While there is some proof supporting Beverly’s inability to pay, there is also evidence that in October 2008 she acquired $15,500 utilizing her home equity. No proof was presented concerning what Beverly did with these funds. Nor did Beverly testify regarding her ability to pay her attorney.
¶ 24. We also emphasize that the chancellor failed to consider Robert’s financial situation. Where neither party is able to pay more than his or her own fees, an award of attorney’s fees is inappropriate. Sarver v. Sarver, 687 So.2d 749, 755 (Miss.1997), overruled on other grounds by Pearson v. Pearson, 761 So.2d 157 (Miss.2000); see also Bell, at § 12.01[6][b] (explaining that the chancellor should consider the parties’ financial disparity).
*1090 ¶ 25. In addition, an award of attorney’s fees must be supported by sufficient evidence for an accurate assessment of fees. See McKee, 418 So.2d at 767 (reversing and remanding award based on insufficient evidence); Powell v. Powell, 644 So.2d 269, 276 (Miss.1994) (same). An itemized bill is not always required. Estimates may support an award in some circumstances if the estimates clearly explain “the method used in approximating the hours consumed on a case.” McKee, 418 So.2d at 767; see also Watkins v. Watkins, 748 So.2d 808, 813 (¶¶ 13-14) (Miss.Ct.App.1999). While this court has held that a chancellor’s failure to apply the McKee factors is not necessarily itself reversible error, see Miley v. Daniel, 37 So.3d 84, 87 (¶ 7) (Miss.Ct.App.2009), the proof must at least support an accurate assessment of fees under the McKee criteria. Bumgarner v. Bumgarner, 475 So.2d 455, 456 (Miss.1985).[9] Here, the evidentiary basis supporting the $1,000 award is not clear from the record.
¶ 26. Therefore, we must remand the issue of attorney’s fees for further consideration. On remand, any award of attorney’s fees must be supported with findings concerning Beverly’s inability to pay and the reasonableness of the award under the McKee factors.

B. Contempt Matter

¶ 27. Attorney’s fees are properly assessed against a party found to be in contempt. Mount v. Mount, 624 So.2d 1001, 1005 (Miss.1993). But here, as already discussed, the chancellor erred by finding Robert in contempt.[10] Since the chancellor based the subsequent award of $1,300 in attorney’s fees solely on an erroneous contempt finding, we reverse and render this award. Moses v. Moses, 879 So.2d 1036, 1041 (¶¶ 21-22) (Miss.2004); Cumberland, 564 So.2d at 845.

III. Deviation from the Guideline Percentages

¶28. The chancellor ordered a downward modification—reducing Robert’s monthly child-support payments from $2,000 to $1,000 due to Robert’s loss of income. But it is undisputed that $1,000 still considerably exceeds the presumptively correct amount under the child-support guidelines. Robert contends the chancellor’s deviation from the support guidelines lacks adequate findings.
¶ 29. Mississippi Code Annotated section 43-19-101(1) (Rev.2009) contains the guidelines for ordering child support. Based on the number of minor children, a certain percentage is applied to the payor’s adjusted gross income (AGI) to determine the proper amount of support. Id. There is a rebuttable presumption the guideline amount is correct both in determining the amount of the initial award and in modifying that award. Id.
¶ 30. To deviate from the presumptively correct amount, the chancellor must make “a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.” Miss.Code Ann. § 43-19-101(2) (Rev.2009). These deviation criteria are:
(a) Extraordinary medical, psychological, educational or dental expenses.
(b) Independent income of the child.
*1091 (c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents’ incomes or expenses.
(e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent’s homemaking services.
(h) Total available assets of the obligee, obligor and the child.
(i) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.
Miss.Code Ann. § 43-19-108(a)-(i) (Rev. 2009).
¶ 31. In deviating from the guidelines, the chancellor made no findings as to Robert’s AGI or the presumptively correct amount based upon the guideline percentages. The chancellor’s May 13 order contains a pronouncement that application of the guidelines would be unjust. Yet he never determined the guideline amount. This court has explained that “[t]he chancellor must apply the guidelines to make the determination that their application would be unjust.” Osborn v. Osborn, 724 So.2d 1121, 1125 (¶ 18) (Miss.Ct.App.1998). While the chancellor’s order perhaps touched on a few of the deviation factors, he made no findings on other important criteria, such as the parties’ total available assets.
¶ 32. The chancellor’s May 13 order contains some authority for imputing income based on earning capacity. Supporting this proposition is our decision in White v. White, 722 So.2d 731, 734 (¶ 21) (Miss.Ct.App.1998) (“We hereby hold that where temporary financial reverses create an unreliable measure for an award of child support, the chancellor may in his discretion predicate an award on reasonable earning capacity.”). But in White, the chancellor made specific findings regarding the child-support payor’s earning capacity. Id. at (¶ 22). Here, it is unclear (1) whether the chancellor deviated from the guidelines on the basis of Robert’s earning capacity, and (2) what monetary amount the chancellor considered Robert’s earning capacity to be.
¶ 33. Beverly alleges Robert made essentially no attempt to get re-elected in November 2007. And she suggests he has made no efforts to find employment since then. She further points to a trip Robert took to Mexico, in early 2009, but Robert’s wife claims to have paid virtually all associated expenses. These considerations may well relate to deviation from the guidelines under the “catch all” factor. However, the fact remains that the chancellor failed to consider some other important criteria, such as Robert’s available assets.
¶ 34. Beverly mentions the equitable principle that “no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful inequity.” Lane v. Lane, 850 So.2d 122, 126 (¶ 11) (Miss.Ct.App.2002). But Beverly has not shown that Robert was financially able to comply with the original child-support decree, yet deliber *1092 ately chose not to. And we find no specific conduct by Robert that can be characterized as wilful inequity.
¶ 35. There is no dispute that Robert’s monthly income had decreased by approximately $3,500 since he had lost his job as county attorney. Robert’s Rule 8.05 financial disclosure indicates his gross monthly income had been reduced to $1,288. His testimony at the hearing evinced his gross income for 2008 was $14,840, which amounts to a monthly gross income of approximately $1,236.66. Instead of calculating Robert’s AGI, the chancellor found:
By the Court: I’m going to say at this time that your income has been cut at least 50%. So, I’m going to reduce [child-support payments] to $1,000[.]
[[Image here]]
By Mr. Evans: Well, I don’t understand where the guidelines are. They don’t even come into place.
By the Court: I don’t think the court has to follow guidelines.
By Mr. Evans: They have to look at them. That McGowan case said—
By the Court: Yes, sir, they have to, but this case is such a mess at this time[,] and I think, as I say, your income has probably been reduced at least that much.
By Mr. Evans: Well, Judge, you’re ordering me to pay her more than I’m making, as far as the records show. By the Court: Yes, sir.
Apparently, based on this finding, the chancellor modified Robert’s child-support payments from $2,000 to $1,000. The chancellor also ordered that Robert provide his son’s ear and health insurance, as well as maintain a life-insurance policy with his son as a beneficiary.[11]
¶ 36. The process of weighing evidence and arriving at a proper award “is essentially an exercise in fact-finding, which customarily significantly restrains [the appellate court’s] review.” Gray v. Gray, 745 So.2d 234, 236 (¶ 10) (Miss.1999). But when the chancellor departs from the guidelines due to the special circumstances of the case, “a written finding must appear on the record sufficient to overcome the presumption that such a deviation is inappropriate.” Kilgore v. Fuller, 741 So.2d 351, 354 (¶ 11) (Miss.Ct.App.1999).
¶ 37. On numerous occasions, our courts have reversed child-support awards deviating from the guideline amounts without being supported by adequate findings. Gray, 745 So.2d at 237 (¶ 14) (remand necessary because chancellor deviated above guideline amounts without finding payor’s AGI or applying deviation factors); Clausel v. Clausel, 714 So.2d 265, 267 (¶ 8) (Miss.1998) (remand necessary because chancellor’s upward deviation from guideline amounts not supported by any finding regarding payor’s ability to pay); Dufour v. Dufour, 631 So.2d 192, 194-95 (Miss.1994) (reversal necessary where chancellor made no reference to guidelines and failed to determine payor’s income); Osborn v. Osborn, 724 So.2d 1121, 1124-25 (¶¶ 12-20) (Miss.Ct.App.1998) (reversal required because no findings regarding payor’s AGI). This court’s observation in Kilgore holds true today: “We have found no authority for permitting the support award to be totally unanchored from the guidelines. There can be a deviation, but not a total disregarding of them.” Kilgore, 741 So.2d at 354 (¶ 12). Indeed, the statute contain *1093 ing the guidelines explicitly requires chancellors to make specific findings under the deviation criteria should they deem deviation from the presumptively correct amounts appropriate. Miss. Code Ann. § 43-19-101(2).
¶ 38. While the dissent appears to agree with our analysis that the chancellor’s deviation from the guidelines is not supported by sufficient findings, it goes a step further and finds no material change in circumstances has occurred. Respectfully, that issue is not before us. Beverly has not cross-appealed the chancellor’s determination that a material change occurred. And indeed, the dissent overlooks that it was Beverly’s attorney who drafted the order finding a material change had occurred, which the chancellor adopted almost verbatim. We decline to hold the chancellor in error on an issue that has not been appealed.
¶ 39. Though the chancellor may well be correct that a deviation above the presumptively correct guideline amounts is warranted, he must provide adequate findings to support the deviation. We reverse and remand on this issue with instructions that the chancellor calculate the proper award according to the guidelines and justify any deviation with specific findings.

TV. Relation Back

¶40. Robert argues Beverly engaged in delay tactics in an effort to increase the number of vested child-support payments. He cites Beverly filing a motion for continuance and later filing a motion for contempt, which prompted the court to again reset the matter.
¶ 41. It is well settled that a reduction in support does not relate back to the date of the filing of a modification action. Cumberland, 564 So.2d at 847. “If a modification is granted, the paying party is responsible for any support payments which vest during litigation of the motion for modification.” Setser, 644 So.2d at 1215-16. “[C]hild support payments vest in the child as they accrue.” Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992). Child-support payments belong to the child, not to the parent, who only receives the “benefits under a fiduciary duty to hold and use them for the benefit of the child.” Cumberland, 564 So.2d at 847. Once child-support payments vest, “they cannot be modified or forgiven by the courts.” Tanner, 598 So.2d at 786. “Each payment that becomes due and remains unpaid becomes a judgment against the supporting parent.” Id. (citation and quotations omitted).
¶ 42. Robert admits the order does not relate back to the date he filed his motion for modification. But he insists the order should relate back to the date of the first hearing on the modification matter. He cites no authority to support this argument. Child-support payments that accrue while the modification action is pending become vested and cannot be forgiven by the courts. Our courts have never carved out his suggested exception, and we decline to do so today. Instead, we reiterate the principle that “[a]ny modification granted will take effect on the date of the judgment granting the modification.” Howard v. Howard, 968 So.2d 961, 977 (¶ 41) (Miss.Ct.App.2007) (citing Cumberland, 564 So.2d at 847).
¶ 43. We find no error in the chancellor’s refusal to have his modification order relate back to an earlier date.
¶ 44. THE JUDGMENT OF THE WASHINGTON COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPIN *1094 ION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. Because Robert timely appealed two of the chancellor’s orders, we consider them together in this appeal.

. By the time of this hearing, the parties’ daughter had reached the age of majority.

. The July 28 order contains the same provision reducing Robert's child-support obligation from $2,000 to $1,000 per month for a six-month period. Like the prior order, it also requires Robert to continue to provide life and medical insurance for his son. Both orders were nunc pro tunc, referencing the dates of bench rulings.

. If the defaulting party fails to promptly file a modification action, "he will, in response to the citation for contempt be required to make out a clear case of inability.” Thurman, 559 So.2d at 1016.

. We note that Beverly has not appealed the chancellor’s determination that Robert's election defeat constituted a material change in circumstances, and that issue is not before us.

. See Issue IV.

. For example, during the hearing, Beverly’s attorney stated:
[A]s of January, '08, [Robert] fell behind. We're seeking in our contempt motion— he’s behind going way back to January, 2008. I would contend that he was caught up December, '07, and his contempt of court action starts January, '08, when he was failing to pay and he was under an order to do that[.]

. An exception to this rule is contempt actions, where attorney’s fees may be properly assessed against the offending party without regard to the recipient’s inability to pay. See Bounds v. Bounds, 935 So.2d 407, 412 (¶¶ 17-19) (Miss.Ct.App.2006). Fees awarded on this basis, though, should not exceed the expense incurred as a result of the contemptuous conduct. Hanshaw v. Hanshaw, 55 So.3d 143, 148 (¶ 17) (Miss.2011).

. While Beverly’s attorney provided some figures as to her hourly rate during debate over attorney’s fees in the contempt action, she offered nothing to support the $1,000 estimate in the modification case.

. See Issue I.

. This court has observed that "there is substantial authority for including all child-related expenses in the determination of whether the guidelines have properly been appliedf.]” Kilgore v. Fuller, 741 So.2d 351, 356 (1117) (Miss.Ct.App.1999) (citing Johnston v. Johnston, 722 So.2d 453, 462 (Miss.1998)).