# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-00165-COA

### CONSOLIDATED WITH

## NO. 2017-CP-00700-COA

### CONSOLIDATED WITH

## NO. 2015-TS-01292

BRIAN BRITT                                                          APPELLANT

v.

CRAIG BRADLEY ORRISON AND THE SHED,                    APPELLEES
INC.

| | |
|---|---|
| DATE OF JUDGMENT: | 01/18/2022 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS SR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BRIAN BRITT (PRO SE) |
| ATTORNEY FOR APPELLEES: | NATHAN LAMAR PRESCOTT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 10/10/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     This is the third appeal in a dispute among Brian Britt and Craig Bradley Orrison and

The Shed Inc. (collectively, Orrison) regarding the sale of a log house.  In the most recent

appeal, this Court reversed the Jackson County Chancery Court's judgment setting aside the

agreed order entered into between the parties.[1]  *Britt v. Orrison*, 323 So. 3d 1135, 1149 (¶52) (Miss. Ct. App. 2021).  In so doing, this Court reinstated the agreed order.  *Id*.  This Court also reversed the chancery court's denial of Britt's October 24, 2012 petition for contempt and remanded that issue for further proceedings.  *Id*.

¶2.     Upon remand, the chancery court held a hearing on Britt's October 24, 2012 petition for contempt and ultimately entered a judgment dismissing the petition.  Britt now appeals the dismissal of his petition for contempt.  On appeal, Britt raises fifteen assignments of error.  This Court will address the following dispositive issues: (1) whether the chancery court erred in denying Britt's request for costs stemming from his prior appeal; (2) whether the chancery court erred in dismissing Britt's October 24, 2012 petition for contempt; and (3) whether the chancery court erred in denying Britt's motion seeking recusal of the chancellor.

¶3.     After our review, we find that this Court lacks jurisdiction to consider the issue of Britt's request for costs stemming from his prior appeal.  We also find that the chancellor did not abuse his discretion in denying Britt's motion to recuse.  However, we find that the

---

[1] The docket shows that this appeal is comprised of three consolidated cases: (1) No. 2015-TS-01292—this appeal was dismissed on November 5, 2015, because the judgment appealed from was not a final judgment; (2) No. 2017-CP-00700-COA—after a final judgment was entered, Britt appealed, and this Court entered an opinion on June 29, 2021, reversing in part and rendering in part and remanding in part, and (3) No. 2022-CP-00165-COA—upon remand, the chancellor held a hearing on Britt's petition for contempt and ultimately entered an order on January 18, 2022, dismissing Britt's petition. The only judgment listed in the notice of appeal is the January 18, 2022 order dismissing Britt's petition for contempt.

chancery court erred in dismissing Britt's October 24, 2012 petition for contempt, and we remand this case to the chancery court for further proceedings consistent with this opinion.

**FACTS**

¶4. In January 2012, Britt and Orrison entered into a contract for the sale of Britt's two-story log house known as the Wilson House Inn Bed & Breakfast ("Wilson House"). As part of the terms, Orrison agreed to move the Wilson House off of Britt's property at his expense. Britt then sold the real property, on which the Wilson House was located, to an orthopedics clinic.

¶5. As of May 2012, Orrison had not taken any action to move the Wilson House. In July 2012, Britt claimed that Orrison unscrewed the upstairs bathroom water line in the Wilson House, which caused the entire house to flood. Orrison called Britt and informed him that the Wilson House had flooded "from the upstairs level." After examining the house, Britt told Orrison that no structural damage occurred. About a week later, Orrison told Britt that he was "backing out of the deal" due to the flooding. Orrison eventually admitted that he had not inspected or even entered the Wilson House to determine its condition at that time.

¶6. In August 2012, the orthopedics clinic that purchased Britt's real property informed Britt that he would be served with eviction papers if the Wilson House remained on the property. Britt immediately made temporary arrangements to remove the house from the property. On August 5, 2012, a moving company transported the Wilson House to an adjoining property owned by Britt. Britt paid approximately $20,300 to move the Wilson

3

House. Per an order from the City of Gautier, the Wilson House had to remain on the mover's steel beams.

¶7. Britt filed a complaint against Orrison for specific performance, temporary injunction, and other relief stemming from Orrison's breach of contract. The parties eventually entered into a settlement agreement. The agreement, which was memorialized in an order entered on September 19, 2012, provided as follows:

1. [Orrison] shall pay [Britt] a total of $15,150.00 as compensation for moving expenses [Britt] paid to [the house moving company] for the move of the two story log house structure commonly referred to as the Wilson House (the "Wilson House");

2. [Orrison] shall assume the contract dated August 5, 2012 between [Britt] and [the house moving company];

3. [Orrison] shall deed two and one half acres of property located approximately one half mile east of 6312 Allen Road, Gautier, Mississippi to [Britt];

4. [Orrison] shall pay [Britt] a total $20,000.00 within 90 days of the day of this Order;

5 [Britt] shall deliver good, marketable and clear title of the Wilson House to [Orrison] within 28 days of the date of this Order;

6. [Orrison] shall have the Wilson House moved from its present location to a location of their choosing within 28 days of the date of this Order; and

7. Upon satisfaction of all considerations outlined herein, [Britt] will execute a full and final release of all claims against [Orrison] which in any way relate to the Wilson House or any contracts pertaining thereto and this action and shall be dismissed with prejudice.

The chancery court retained jurisdiction until all conditions outlined in the September 19,

4

2012 agreed order had been satisfied. On the same day the agreed order was entered, Orrison paid Britt $15,150 in partial satisfaction. Britt signed a bill of sale on October 17, 2012, conveying and transferring ownership of the Wilson House to Orrison.

¶8. On October 24, 2012—after Orrison failed to relocate the Wilson House within the twenty-eight-day deadline mandated by the agreed order—Britt filed a petition for contempt against Orrison. In response, Orrison filed a motion under Mississippi Rule of Civil Procedure 60(b) seeking to set aside the agreed order. In his motion, Orrison claimed that Britt misrepresented the condition of the house. Orrison argued that he only entered into the agreed order because Britt had represented that the Wilson House did not have any water damage or mold. Orrison claimed that upon inspecting the house, he discovered that it had extensive mold and water damage.

¶9. After hearings on the parties' respective motions, the chancery court granted Orrison's motion to set aside the September 19, 2012 agreed order after finding that "the parties failed to reach an agreement of such specificity to convey the property." As for Britt's petition for contempt, the chancellor stated at the hearing that he would not rule on the petition because Britt had failed to issue a summons as required by Mississippi Rule of Civil Procedure 81. However, the chancellor ultimately ruled that because he set aside the agreed order, Britt's petition for contempt was moot.

¶10. Litigation continued over the next four years. During that time, Orrison obtained a default judgment against Britt, and the chancery court awarded Orrison damages. After the

5

chancery court denied Britt's motion for a new trial, Britt appealed.

¶11. On appeal, this Court reversed and rendered the chancery court's judgment setting aside the September 19, 2012 agreed order. *Britt*, 323 So. 3d at 1149 (¶52). This Court found that "Orrison had knowledge of the Wilson House's condition prior to the order setting aside the agreement, yet he made no reasonable effort to determine the condition of the building himself." *Id*. at 1146 (¶39). This Court also disagreed with the chancery court's finding that the agreed order was ambiguous as to the description of the property that Orrison was to convey to Britt, explaining that "[a]lthough the pertinent provision of the agreed order did not give a legal description of the property, the intent of the parties was clear: Orrison agreed to convey a two and a half acre parcel to Britt." *Id*. at (¶41). Additionally, this Court found that "the agreed order did not violate the statute of frauds." *Id*. at 1147 (¶44). This Court ultimately reinstated the September 19, 2012 agreed order. *Id*. at 1149 (¶52).

¶12. This Court also found that the chancery court erred in granting a default judgment to Orrison and accordingly reversed and rendered. *Id*.

¶13. As for Britt's October 24, 2012 petition for contempt, this Court found that Orrison waived any service of process defects. *Id*. at 1148 (¶48). This Court therefore found that the chancellor erred by failing to hear the motion. *Id*. at 1147 (¶45). This Court explained that

> Orrison's counsel appeared in court and announced that he was ready to proceed in defending Orrison against Britt's [petition] for contempt. Orrison never raised or objected to Britt's failure to serve a Rule 81 summons. Furthermore, although no definite hearing date was listed, Orrison received notice about a hearing for Britt's [petition] for contempt on October 24, 2012.

6

*Id*. at 1148 (¶48). This Court therefore remanded the matter of Britt's petition for contempt for further proceedings. *Id*. at 1149 (¶52).

¶14. After this Court entered its mandate, the chancery court held a remand hearing on Britt's October 24, 2012 petition for contempt. At the hearing, the chancellor discovered that in August 2016 (prior to the chancery court's ruling in the proceedings below and also prior to Britt's 2017 appeal), Britt conveyed the Wilson House to the City of Gautier. According to a memorandum from the City of Gautier outlining Britt's conveyance of the Wilson House, Britt swore under oath that he was the sole owner of the Wilson House. Britt admitted that he did not advise the chancery court or the Court of Appeals of the conveyance.[2]

¶15. The chancery court ultimately dismissed Britt's petition for contempt in an order entered on January 18, 2022. In the order, the chancery court explained that "[t]here are several defenses to contempt, including impossibility of performance. If performance of an order is impossible, a defendant may not be held in contempt for failure to comply with the order." The chancery court found that as a result of Britt's conveyance of the house, Britt

---

[2] The record reflects that Britt signed a bill of sale on October 17, 2012, conveying and transferring ownership of the Wilson House to Orrison. *Britt*, 323 So. 3d at 1140 (¶13). On November 20, 2013, the chancery court held a hearing on Britt's complaint for specific performance and a temporary injunction. The chancery court ultimately denied Britt's complaint, and at the conclusion of the hearing, the chancellor informed Britt that "as far as the [chancery] court is concerned, you're free to do what you want with [the Wilson House] . . . . If you can sell it from $100,000, I think you're free to do that." Orrison then testified under oath and confirmed to the chancellor that he had no claim to the Wilson House and that Britt was "free to do whatever he likes with the house."

7

"willfully and intentionally destroyed any ability of this [c]ourt to enforce the [September 19, 2012 agreed order]." The chancery court accordingly held that it could not find Orrison in contempt for failing to comply with the agreed order because Britt's conveyance of the Wilson House, which was the basis of the motion for contempt, "destroyed" Orrison's ability to comply with the order. The chancery court also found that "Britt secreted the information about the Wilson House conveyance from Mr. Orrison, from this [c]ourt, from the Court of Appeals and from the Mississippi Supreme Court."

¶16. Additionally, the chancery court held that Britt failed to file a Rule 81 summons. However, the chancery court held that the issue of the summons was moot because Britt "destroyed the ability" of either party to comply with the September 19, 2012 agreed order."[3]

¶17. On February 9, 2022, Britt filed a motion titled "Motion for New Hearing Before Impartial Judge and Motion for Judgment Against the Defendants for Court Costs in a Specific Amount." In the body of the motion, Britt argued that he was entitled to a new hearing before an impartial judge and that the chancery court erred by refusing to grant him costs stemming from his prior appeal. Britt also argued that he was entitled to a new trial, and he even referred to the February 9, 2022 motion as a motion for a new trial. In so doing,

---

[3] The chancery court found that Britt himself could not comply with the agreed order, explaining that because the City of Gautier now owned the Wilson House, Britt could not convey it to Orrison. However, as stated, the record reflects that Britt did in fact sign a bill of sale on October 17, 2012, conveying and transferring ownership of the Wilson House to Orrison. *Britt*, 323 So. 3d at 1140 (¶13). As we will discuss further below, any issues stemming from Orrison's 2016 conveyance of the Wilson House are not before us on appeal.

Britt acknowledged that he failed to file the motion within ten days of the entry of the chancellor's January 18, 2022 judgment. *See* M.R.C.P. 59(b) ("A motion for a new trial shall be filed not later than ten days after the entry of judgment."). However, Britt claimed that he was not notified that the chancery court had entered an order, and therefore he did not discover the order had been entered until January 28, 2022. Britt asserts that as a result, it was "impossible" to file his motion for a new trial within days of the entry of the order.[4]

¶18. Britt also filed a timely notice of appeal within thirty days of the chancery court's January 18, 2022 judgment. *See* M.R.A.P. 4(a).

## DISCUSSION

¶19. On appeal, Britt asserts fifteen assignments of error. The vast majority of Britt's assignments of error are not supported by caselaw,[5] and many of his arguments are repetitive.

---

[4] As we will discuss further, the record does not contain a ruling by the chancellor disposing of Britt's February 9, 2012 motion. In this motion, Britt made an untimely motion for a new trial. "Where a *timely*, undisposed [Mississippi] Rule [of Civil Procedure] 59 motion remains pending in chancery court, there is no final appealable judgment within the jurisdiction of this Court." *Darnell v. Darnell*, 199 So. 3d 695, 696 (¶1) (Miss. 2016) (emphasis added). Britt's motion for a new trial was *untimely* filed. The Mississippi Supreme Court has clarified that a trial court has no jurisdiction to consider an *untimely* Rule 59 motion for a new trial; therefore, the fact that the chancery court has not ruled on Britt's motion for a new trial does not affect our jurisdiction over this matter. *See Telford v. Aloway*, 530 So. 2d 179, 181 (Miss. 1988).

[5] Mississippi Rule of Appellate Procedure 28(a)(7) requires an appellant's brief to contain "citations to the authorities, statutes, and parts of the record relied on." The Mississippi Supreme Court has held that "[i]t is the duty of an appellant to provide authority in support of an assignment of error." *Flowers v. Boolos (In re Est. of Smith)*, 204 So. 3d 291, 313 (¶49) (Miss. 2016). The failure to cite authority "is considered abandonment of the issue; thereby making the issue procedurally barred for appellate review." *Id*.

As a result, this Court will only address the dispositive issues.

## I. Request for Appellate Costs of Prior Appeal

¶20.   Britt's first issue on appeal is that the chancery court erred when it did not enter a judgment against Orrison for the court costs of Britt's prior appeal. This Court's July 20, 2021 mandate disposing of Britt's prior appeal states that Orrison is "taxed with costs of appeal."

¶21.   After filing his notice of appeal in the present case, Britt then filed a "Motion for Judgment Against Appellees for Court Costs of Appeal" on March 1, 2022. In this motion, Britt claimed that the chancery court refused to consider his request for the costs of his prior appeal and that the chancery court found that Britt's costs were irrelevant.

¶22.   On April 5, 2022, a three-judge panel of this Court entered an order responding to Britt's motion. In the order, this Court held that "neither the chancery court's January 18, 2022 order nor the chancery clerk's docket entries support [Britt's] assertion" that the chancery court refused to consider Britt's request for the costs of appeal or that the chancery court found that his costs were irrelevant. This Court further found "no indication that Britt has asked the chancery court solely for the costs of the appeal that was previously assigned to this Court or that the chancery court has refused to award those costs." This Court explained that "it appears that the chancery court has simply declined to award Britt damages incident to the case that led to his previous appeal." This Court also acknowledged that Britt's request for appellate costs is still pending before the chancery court through Britt's

10

February 9, 2022 "Motion for New Hearing Before Impartial Judge and Motion for Judgment Against the Defendants for Court Costs in a Specific Amount." This Court held that "[t]he chancery court is a more appropriate forum for Britt's request" and accordingly dismissed Britt's motion for appellate costs without prejudice. *See* M.R.A.P. 36(d) ("A party who is not aggrieved by the opinion or mandate but who seeks relief as to any other matter involving costs shall seek relief in the trial court.").

¶23. Based on the above, we find that Britt failed to raise the issue of appellate costs in the chancery court prior to filing his present notice of appeal. "We will not consider issues raised for the first time on appeal." *Anderson v. LaVere*, 136 So. 3d 404, 410 (¶27) (Miss. 2014). Furthermore, the record reflects that Britt's February 9, 2022 motion, in which he first raised the issue of the costs of his prior appeal, is still pending in the chancery court. As previously stated, the record contains no ruling from the chancery court on this motion. The chancery court's docket shows that Britt noticed this motion for hearing, but the notice does not appear in the record before us. Because Britt's request for appellate costs stemming from his prior appeal is still pending in the chancery court, we lack jurisdiction to consider this issue on appeal. *LaFontaine v. Holliday*, 110 So. 3d 785, 787 (¶10) (Miss. 2013).

## II.    Petition for Contempt

¶24. Although this case has a lengthy litigation history, the only judgment before us on appeal is the chancery court's January 18, 2022 order denying Britt's October 24, 2012 petition for contempt. While we find it concerning that Britt did not disclose to this Court

11

during the prior appeal that he had conveyed the Wilson House to a third party, we acknowledge that this conveyance occurred outside of the time period covered in the petition for contempt.

¶25. The purpose of a civil contempt order is to "enforce a private party's rights or compel compliance with a court's order." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (¶13) (Miss. 2011). In a contempt proceeding, the inquiry "is limited to whether or not the [court's] order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court." *Wallace v. Wallace*, 309 So. 3d 104, 111 (¶29) (Miss. Ct. App. 2020). "Failure to comply with a court order is prima facie evidence of contempt." *Evans v. Evans*, 75 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2011). We recognize that "[t]he only defenses to a contempt violation include an inability to comply with the court order or that the court order was unclear." *Wallace*, 309 So. 3d at 111 (¶29). The standard of review for civil contempt on appeal is manifest error, meaning "the factual findings of the chancellor are affirmed unless manifest error is present and apparent." *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994).

¶26. As stated above, the parties entered into an order on September 19, 2012, and agreed to the following: (1) Orrison will pay Britt $15,150 as compensation for moving expenses caused by Britt in moving the Wilson House off his property; (2) Orrison will assume the contract between Britt and the house moving company; (3) Orrison will deed two and a half

12

acres of land to Britt; (4) Orrison will pay Britt $20,000 within ninety days of the date of the order; (5) Britt will deliver title of the Wilson House to Orrison within twenty-eight days of the order; (6) Orrison will move the Wilson House to a new location within twenty-eight days of the order; and (7) upon satisfaction of all considerations outlined in the order, Britt will execute a full and final release of all claims against Orrison relating to the Wilson House. That same day, Orrison paid Britt $15,150 in partial satisfaction of the agreed order.

¶27.    Twenty-eight days later, on October 17, 2012, Britt signed a bill of sale conveying and transferring ownership of the Wilson House to Orrison. This Court has previously found that "[a]t this point, Britt had met his obligations under the agreed order." *Britt*, 323 So. 3d at 1140 (¶13).

¶28.    On October 24, 2012—thirty-five days after the agreed order was entered—Britt filed a petition for contempt against Orrison. In his petition, Britt asserted that Orrison failed to comply with the September 19, 2012 agreed order. Specifically, Britt alleged that Orrison failed to move the Wilson House from its present location within twenty-eight days of the agreed order. Britt also asserted that Orrison had not yet deeded Britt two-and-a-half acres of land as required by the agreed order, but Britt acknowledged that the agreed order did not set forth any time frame for performance regarding this requirement. Britt requested the chancery court to award him $2,500 in consequential damages as a result of losses Britt incurred due to Orrison's violation of the agreed order, as well as any punitive damages in an amount deemed appropriate by the court. Britt further requested that the chancery court

13

order Orrison to pay Britt $20,000 as required by the agreed order, even though the ninety-day time limit for this requirement had not yet expired.

¶29.   On December 7, 2012, Orrison filed a motion to set aside the agreed order and to stay enforcement, as well as a response to Orrison's petition for contempt. In the motion, Orrison admitted that he had not moved the Wilson House. However, Orrison alleged that Britt misrepresented the condition of the Wilson House at the time Orrison entered into the September 19, 2012 agreed order.

¶30.   The chancellor held a hearing on Britt's petition for contempt and Orrison's motion to set aside the order and stay enforcement on December 13, 2012, and January 18, 2013. At the hearing on Britt's petition for contempt, Britt admitted that Orrison had paid the $15,150 as required by the agreed order, and the record confirms this payment. However, the testimony and evidence presented showed that as of the date of the hearing, Orrison still had not paid the $20,000 or conveyed the two-and-a-half acres of land to Britt. At the hearing, Britt acknowledged that the ninety-day time frame for Orrison to pay the $20,000 had not yet passed. (Ninety days from the date of the agreed order was December 19, 2012, and the initial hearing was held on December 13, 2012.) The chancellor and Britt also agreed that the agreed order did not set forth any specific time frame for performance regarding the conveyance of the two-and-a-half acres.

¶31.   During the hearing, the chancellor announced that he would not hear Britt's petition for contempt because Britt had failed to issue a Rule 81 summons. The chancellor then

14

entered an order on January 29, 2013, granting Orrison's motion to set aside the September 19, 2012 agreed order and finding Britt's petition for contempt to be moot. As a result, Orrison was relieved of complying with the agreed order. However, on appeal, this Court reinstated the September 19, 2012 agreed order. *Britt*, 323 So. 3d at 1149 (¶52). This Court also remanded Britt's petition for contempt for further proceedings. *Id*.

¶32. On remand, the chancellor held a hearing on Britt's petition for contempt. When the chancellor discovered that Britt had conveyed the Wilson House to the City of Gautier, the chancellor dismissed Britt's petition. In the order, the chancery court explained that impossibility of performance is a defense to contempt. The chancery court found that as a result of Britt's conveyance of the Wilson House, Britt "willfully and intentionally" destroyed both parties' ability to comply with the September 19, 2012 agreed order and the chancellor's ability to enforce the agreed order.[6]

¶33. However, as stated, Britt conveyed the Wilson House to the City of Gautier in 2016, approximately four years after the time frame covered in the October 24, 2012 petition for contempt. Therefore, Britt's conveyance of the Wilson House in 2016 has no bearing on the issue before us: whether Orrison was in contempt of the September 19, 2012 agreed order at the time Britt filed his petition on October 24, 2012. After our review, we find that the record is clear that at the time Britt filed his petition for contempt, Orrison had not moved

---

[6] The chancellor also found that Britt failed to properly serve Orrison pursuant to Rule 81. However, this Court has already held that "Orrison waived any service of process defects." *Britt*, 323 So. 3d at 1148 (¶48).

the Wilson House within the time frame provided by the agreed order. Because the "[f]ailure to comply with a court order is prima facie evidence of contempt[,]" we find that the chancellor erred by dismissing Britt's petition for contempt. *Evans*, 75 So. 3d at 1087 (¶14).

¶34. Britt argues on appeal that the chancellor erred by failing to let Britt amend his contempt pleadings to "accurately reflect the changed set of circumstances" over the past decade since he first filed his petition for contempt. The record reflects that Britt never filed a motion seeking to amend his pleadings; rather, during the remand hearing, Britt made an ore tenus motion requesting that the chancellor allow him to amend his October 24, 2012 petition to reflect the current circumstances. Our review of the transcript does not reflect any ruling by the chancellor on this motion; accordingly, we find that Britt waived this issue on appeal. We have held that "a motion, standing alone, will not preserve the issue for appeal unless the party pursues it to a ruling by the trial court[.]" *Graham v. State*, 264 So. 3d 819, 821 (¶7) (Miss. Ct. App. 2018). "It is the responsibility of the movant to obtain a ruling on all motions filed by him, and the failure to obtain a ruling constitutes a waiver." *Id*. Nevertheless, we find nothing to prevent Britt from filing a second petition for contempt to address any present non-compliance with the reinstated September 19, 2012 agreed order.

¶35. After our review, we reverse the chancery court's January 18, 2022 judgment dismissing Britt's petition for contempt, and we remand this matter to the chancery court to determine whether damages are warranted as a result of Orrison's contempt. If damages are awarded, the chancery court shall limit the award to damages incurred by Britt as of the date

16

of his petition for contempt. Because this Court has reinstated the September 19, 2012 agreed order, the chancery court must also clarify a definite time frame regarding Orrison's conveyance of the two-and-a-half acres of land. *See Savell v. Manning*, 325 So. 3d 1208, 1224 (¶59) (Miss. Ct. App. 2021).

### III. Recusal

¶36. Britt also argues that the chancellor erred by denying Britt's motion for recusal. "We review a trial judge's denial of a motion to recuse under the manifest abuse of discretion standard." *Roley v. Roley*, 329 So. 3d 473, 502 (¶87) (Miss. Ct. App. 2021) (internal quotation marks omitted).

¶37. The transcript shows that at the January 5, 2022 hearing, the chancellor denied Britt's motion for recusal. The chancellor explained that the motion was untimely filed and did not comply with the requirements of Uniform Chancery Court Rule 1.11. In his appellate brief, Britt admits that the chancellor's finding that he failed to comply with the procedural requirements of Rule 1.11 was "probably correct." However, Britt maintains that the chancellor should have sua sponte recused himself in this matter due to the "appearance of impropriety"; namely, that Orrison's counsel and the chancellor had "lengthy secret ex parte conferences" in September 2012.

¶38. We must first acknowledge that Britt failed to provide any authority in his appellate brief in support of this assignment of error; therefore his brief fails to comply with Mississippi Rule of Appellate Procedure 28(a)(7). As stated, the failure to cite authority "is

considered abandonment of the issue; thereby making the issue procedurally barred for appellate review." *In re Est. of Smith*, 204 So. 3d at 313 (¶49).

¶39. Procedural bar notwithstanding, our review of the record confirms that Britt failed to comply with Rule 1.11. Rule 1.11 governs the recusal of judges and requires that a party moving for the recusal of a chancellor file its motion "within 30 days following notification to the parties of the name of the judge assigned to the case" or "within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." UCCR 1.11. On July 20, 2021, this Court entered its mandate reversing and remanding the issue of Britt's motion for contempt. The chancery court entered a reset order on November 3, 2021, resetting the case before Judge D. Neil Harris, the same chancellor who presided over the proceedings below. The record shows that Britt did not file his motion for recusal until January 5, 2022, well over thirty days past the entry of the order notifying Britt of the chancellor assigned to his case.

¶40. We also find that Britt failed to file an affidavit with his motion for recusal. Rule 1.11 provides that a motion for recusal must be filed with an affidavit "setting forth the factual basis underlying the asserted grounds for recusal and declaring that the motion is filed in good faith and that the affiant truly believes the facts underlying the grounds stated to be true."

¶41. Because Britt failed to comply with the requirements of Rule 1.11, we find that the chancellor did not abuse his discretion in denying Britt's motion to recuse.

**CONCLUSION**

¶42.    We affirm the chancellor's denial of Britt's motion to recuse. However, we reverse the chancery court's judgment dismissing Britt's petition for contempt, and we remand this matter to the chancery court for a determination of damages, if any, resulting from Orrison's contempt. The chancery court shall limit any damages to those actually incurred by Britt as of the date of his petition for contempt. The chancery court must also clarify a definite time frame for Orrison to convey the two-and-a-half acres of land to Britt as agreed upon in the September 19, 2012 order.

¶43.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**

19